[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1001 
Katherine Cottingham sued Big B, Inc., and one of its assistant store managers, Gary Vaughn. Cottingham sought to recover compensatory and punitive damages from Vaughn for false imprisonment and assault and battery (her assault and battery claim was based on allegations that Vaughn forced her to engage in a sex act with him) and from Big B based on the doctrine of respondeat superior. She also alleged that Big B had negligently or wantonly trained and supervised Vaughn and that that negligence or wantonness was the proximate cause of her injuries. Cottingham sought punitive damages from Big B under her wantonness claim as well. At the close of all the evidence, the trial court granted Big B's motion for a directed verdict on the assault and battery claim, ruling that Vaughn's solicitation of the sex act from Cottingham was outside the line and scope of his employment with Big B. The trial court also granted Cottingham's motion to dismiss Vaughn as a defendant. The trial court denied Big B's motion for a directed verdict on the false imprisonment, negligence, and wantonness claims and submitted those claims to the jury, with Big B as the only defendant. The jury returned a general verdict for Cottingham, awarding her $5,000 in compensatory damages and $1,000,000 in punitive damages, and the trial court entered a judgment on that verdict. Big B's motion for a judgment notwithstanding the verdict as to all of the claims or, in the alternative, a new trial or remittitur was later denied. Big B appeals, and we conditionally affirm.
 False Imprisonment
False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty. Ala. Code 1975, § 6-5-170. For there to be a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. Daniels v. Milstead, 221 Ala. 353,128 So. 447 (1930). An employer may be held legally liable for a false imprisonment committed by one of its employees while acting within the line and scope of his employment.Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773
(1934). Ala. Code 1975, § 6-11-27(a), provides:
 "(a) A principal, employer or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee or servant of said principal, employer or master unless the principal, employer or master either: (i) knew or should have known of the unfitness of the agent, employee or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer or other master, except where the plaintiff knowingly participated with the agent, servant or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
(Emphasis added.)
After carefully reviewing the record, we conclude that the evidence, when viewed in the light most favorable to Cottingham, *Page 1002 
was sufficient to submit the false imprisonment claim to the jury. There was both substantial and clear and convincing evidence that Vaughn, while acting within the line and scope of his employment, wrongfully detained Cottingham during business hours at one of Big B's stores after a shoplifter, an acquaintance of Cottingham's who had entered the store with her, had escaped.[1] Vaughn, who Cottingham said appeared to be upset that the shoplifter had escaped, held Cottingham in a back room, where he falsely accused her of participating in the theft and demanded that she tell him who the shoplifter was. Vaughn, a former marine, stood between Cottingham and the door, intimidating her and threatening to have her arrested and prosecuted on shoplifting charges. Vaughn testified that "[Cottingham] was verbally abused [by him in a manner] which no human being should have ever went through." He further testified: "I know I done wrong for the simple fact of the verbal abuse Ms. Cottingham has had to take. . . . There is not another human being [who] should have been put through what she was put through because of one man's anger to get at another man." Cottingham, who testified that she was too afraid to attempt to leave the room, asked Vaughn what she could do to avoid prosecution. Vaughn asked what his cooperation was worth to her. Cottingham offered to pay for the merchandise that had been stolen or to clean the store. Before this discussion could progress any further, a police officer arrived to investigate the incident. Vaughn told Cottingham that their discussion would have to continue after the police officer left. Cottingham cooperated fully with the police officer, identifying the shoplifter by name. Vaughn told the officer that Cottingham was a witness and that she had had nothing to do with the theft. It was at this point that Big B's liability under the doctrine of respondeat superior ended. After the officer had gone, Vaughn immediately picked up his conversation with Cottingham where they had left off, telling Cottingham that he had up to six months to have her prosecuted. Vaughn then asked Cottingham if she had "ever [given] a white man a blow job." Cottingham replied that she had not. Vaughn responded, "Well, you're about to learn." Vaughn then grabbed Cottingham by her arms and forced her to perform fellatio on him by threatening to file a criminal complaint against her.
Although it is undisputed for purposes of this appeal that Big B is not legally responsible for Vaughn's actions after the police officer left,[2] there was sufficient evidence to show that up until the police officer's arrival Vaughn, while acting within the line and scope of his employment and for Big B's benefit, had falsely imprisoned Cottingham. We hold, therefore, that the false imprisonment claim against Big B was properly submitted to the jury.
 Negligent Training and Supervision
In Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098,1100 (Ala. 1983), this *Page 1003 
Court, quoting Thompson v. Havard, 285 Ala. 718, 723,235 So.2d 853 (1970), stated:
 " 'In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care."
See, also, Ledbetter v. United American Ins. Co.,624 So.2d 1371 (Ala. 1993).
The evidence material to Cottingham's claim of negligent training and supervision, again viewed most favorably toward Cottingham, shows the following: Big B ran a background check on Vaughn before it hired him, and that check, which included an examination of his credit history, revealed nothing that would have called into question Vaughn's fitness for employment. Vaughn's application for employment with Big B indicated that Vaughn had been honorably discharged from the United States Marine Corps and that he had obtained management experience while working with another retail store chain. Vaughn also took and passed the "Reid Psychological Systems Test," which was used by Big B as a tool to evaluate a potential employee's integrity. During his employment with Big B, Vaughn received mostly favorable performance evaluations from his superiors and he was considered to be exceptional in the area of store security. Before his dismissal, Vaughn had apprehended numerous shoplifters without an incident or a complaint of impropriety. However, Vaughn's supervisors did not review Big B's training manuals with Vaughn in accordance with company policy. In addition, Vaughn's supervisors had a reason to question Vaughn's fitness for employment when he was accused of making an unwanted sexual advance toward a 16-year-old female part-time employee of Big B. The young woman had complained to her mother, who in turn had complained to Randall Stephens, one of Big B's district managers. Stephens confronted Vaughn with the accusation in a meeting that was also attended by Jose Suco, Vaughn's immediate supervisor. Vaughn denied any wrongdoing, and Stephens instructed him "that Big B absolutely did not tolerate anything like that in any shape, form or fashion, [and] that he would be terminated immediately if [management] even thought [that] he was even thinking about anything like that or [that he had given] anybody the impression that he would do anything like that." Stephens again emphasized Big B's policy against sexual harassment in a subsequent meeting with Vaughn and informed Vaughn at that meeting that his future performance would be monitored by Suco. The female employee was transferred to another one of Big B's stores. However, Stephens did not personally interview the female employee or prepare and forward to corporate headquarters a formal written report. Stephens did report the incident to his supervisors, Steve Collins and Bobby Little.
After carefully reviewing the record, we conclude, in accordance with our standard of review, that there was sufficient evidence to show a failure on the part of Vaughn's supervisors to review the company's training manuals with Vaughn or to otherwise train Vaughn as to the proper manner in which to detain and question a suspected shoplifter. There was also sufficient evidence to allow the jury to determine whether Vaughn's supervisors were negligent in failing to properly investigate the accusation of sexual harassment *Page 1004 
made by the mother of the female employee. Although this accusation came to the attention of Stephens and Suco by way of the employee's mother and, thus, was hearsay, a fact question was nonetheless presented as to whether they exercised due care in the way that they handled the matter. The evidence suggests that the female employee could have been interviewed and that a formal report could have been prepared and forwarded to Big B's corporate headquarters for review. The jury could have found that if Stephens had sufficiently investigated the incident, Vaughn's attitude toward women and his fitness for employment would have been more seriously reevaluated and he would not have been allowed to remain in a position where he could mistreat female customers or employees. Thus, we hold that the claim for negligent training and supervision was properly submitted to the jury.
 Wanton Training and Supervision
"Wantonness" is defined in § 6-11-20(b)(3) as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." In Valley Building Supply,Inc. v. Lombus, 590 So.2d 142, 144 (Ala. 1991), this Court, citing Lynn Strickland Sales Service, Inc. v. Aero-LaneFabricators, Inc., 510 So.2d 142 (Ala. 1987), explained the difference between negligence and wantonness:
 "What constitutes wanton misconduct depends on the facts presented in each particular case. South Central Bell Telephone Co. v. Branum, 568 So.2d 795 (Ala. 1990); Central Alabama Electric Coop. v. Tapley, 546 So.2d 371 (Ala. 1989); Brown v. Turner, 497 So.2d 1119 (Ala. 1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972). A majority of this Court, in Lynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala. 1987), emphasized that wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (i.e., mere inadvertence):
 " 'Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . .'
 "510 So.2d at 145. See also Central Alabama Electric Coop. v. Tapley, supra, and South Central Bell Telephone Co. v. Branum, supra."
To prevent a directed verdict or a judgment notwithstanding the verdict from being entered for Big B on her wanton training and supervision claim, Cottingham had to support her claim for compensatory damages with substantial evidence that Vaughn's supervisors made a conscious decision to downplay the sexual harassment complaint that had been made against Vaughn by the mother of the female employee, knowing that to do so would likely result in Vaughn's mistreating a female customer or employee. Cottingham had to support her claim for punitive damages with clear and convincing evidence. After extensively reviewing the evidence and carefully considering the briefs of the parties, we hold that Cottingham made the necessary evidentiary showing to sustain her claim of wanton training and supervision. As previously noted, Vaughn's supervisors did not train Vaughn how to properly detain and handle an accused shoplifter, even though Vaughn detained shoplifters on numerous occasions. Furthermore, Vaughn's fitness for employment was called into question when the mother of a 16-year-old female employee accused Vaughn of making an improper sexual advance toward her daughter. Although Stephens and Suco confronted Vaughn with the mother's accusation and Vaughn denied any wrongdoing, Stephens and Suco did not interview the female employee or file a thorough formal report with Big B's corporate headquarters. The jury could have reasonably inferred from the evidence that Stephens and Suco consciously chose to downplay the incident in order to retain Vaughn, knowing that to do so would likely give Vaughn another opportunity to demean or otherwise mistreat a female customer or employee. We hold, therefore, that on Cottingham's *Page 1005 
claim of wanton training and supervision Big B was not entitled to a judgment notwithstanding the verdict.
After examining the remaining issues presented by Big B, we hold that all of those issues, with the exception of the one concerning the excessiveness of the punitive damages award, are without merit.
 Excessiveness
Big B's argument that the punitive damages award must be reduced to $250,000 because there was no evidence of a pattern or practice of intentional wrongful conduct is without merit. The majority of this Court declared Ala. Code 1975, § 6-11-21, unconstitutional as violating Article I, § 11, Alabama Constitution of 1901 ("That the right to trial by jury shall remain inviolate"), in Henderson v. Alabama Power Co.,627 So.2d 878 (Ala. 1993). In the case at issue, a jury awarded $1,000,000 in punitive damages. There is no constitutional law requiring that a jury's award of punitive damages be reduced to $250,000.
The trial court did conduct a Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), hearing. As was noted in Pacific MutualLife Insurance Co. v. Haslip, 499 U.S. 1, 21, 111 S.Ct. 1032,1045, 113 L.Ed.2d 1 (1991), it is the practice of this Court, when excessiveness of a punitive damages award is raised as an issue in an appeal, to consider the following factors in determining whether the punitive damages award is excessive:
 "(a) [W]hether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the 'financial position' of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation."
499 U.S. at 21-22, 111 S.Ct. at 1045.
Having tested the jury's $1,000,000 punitive damages award by all of these factors, we have determined that under the facts of this case the only factor that would be relevant to the issue of remittitur is "(b) the degree of reprehensibility" of Big B's acts or omissions.
Vaughn was a defendant in this case. Therefore, evidence was admitted and before the jury that Vaughn forced the plaintiff to commit an act of unnatural copulation on him, which was a crime under Ala. Code 1975, § 13-1-110. This evidence was inflammatory but was properly admitted under the claim of assault and battery while Vaughn was a defendant. At the close of all the evidence, the trial court directed a verdict on the assault and battery count in favor of Big B. The plaintiff, in an astute legal maneuver, then dismissed Vaughn as a defendant. When the case was submitted to the jury, Big B was the only defendant. The plaintiff did not cross-appeal from the trial court's order directing a verdict for Big B on the assault and battery count; therefore, it is the law of the case that Big B is not legally liable for Vaughn's forcing the plaintiff to commit fellatio. However, Vaughn's act was so reprehensible that if it had been committed in the line and scope of his employment with Big B, we would not have hesitated to affirm the $1,000,000 punitive damages award against Big B.
When we consider the reprehensibility of the acts and omissions for which Big B could be punished in this case (false imprisonment and wanton failure to train and supervise Vaughn) in light of other punitive damages awards for similar acts and omissions in this state and in surrounding states (Wal-Mart v.Jones, 533 So.2d 551 (Ala. 1988); Delchamps, Inc. v. Morgan,601 So.2d 442 (Ala. 1992) (reversed on a " 'good count, bad count' problem," see Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981)); K-Mart Corp. v. Gordon, 565 So.2d 834 (Fla. Dist. Ct. App. 1990); Jack Eckerd *Page 1006 Corp. v. Smith, 558 So.2d 1060 (Fla.Dist.Ct.App. 1990);Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985)), we conclude that the punitive damages award is excessive.
A new trial may be granted because of excessive or inadequate damages. Ala. Code 1975, § 12-13-11(a)(4); Rule 59(a), Ala.R.Civ.P. A jury's verdict must be within the bounds of reason, as perceived by the judicial mind, although it may exceed, or be less than, what any particular judge's life experiences would have it be. Although granting a new trial infringes upon the first jury's findings and verdict, it does so at the latest point in the trial proceedings; it does so with the least intrusion upon the right to trial by jury, consistent with imposing necessary limits upon a jury's power, because the factual issue of the amount that it will take to punish and deter this defendant and others similarly situated is tried by another jury and not by the trial court or this Court. Regardless of the subsequent jury's verdict, there is no attaint, fine, or imprisonment resulting from the action of the first jury as there was at common law. J. Thayer, A PreliminaryTreatise on Evidence of the Common Law, at 140-41 (1898); Smith, The Power of the Judge to Direct a Verdict, 24 Colum.L.Rev. 111, 112, n. 46 (1924); Bushnell's Case, 124 Eng.Rep. 1006 (C.P. 1670).
There is statutory authority for this Court to grant a remittitur in lieu of granting a new trial. Ala. Code 1975, § 12-22-71. In remitting a punitive damages award, we must remit only that amount in excess of the maximum amount that a properly functioning jury could have awarded. In this case, we are persuaded that a properly functioning jury could have awarded a maximum of $600,000 in punitive damages to punish Big B for false imprisonment and wanton failure to train and supervise Vaughn and to deter Big B and others from similar actions or failures.
Big B overcame the presumption of correctness that attached to the jury's punitive damages verdict by proving that the verdict was excessive for the purpose of punishing and deterring Big B for the act or omissions for which Big B could be punished. Therefore, we affirm the judgment, conditioned upon the plaintiff's accepting, within 30 days of this judgment, a remittitur of $400,000 of the $1,000,000 punitive damages award. If the plaintiff fails to accept this remittitur within 30 days, the judgment will be reversed and a new trial ordered.
AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and MADDOX, ADAMS, KENNEDY and INGRAM,* JJ., concur.
[1] Because this case was not pending on June 11, 1987, the applicable standard for reviewing the sufficiency of the evidence on Cottingham's compensatory damages claim is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). However, the applicable standard for reviewing the sufficiency of the evidence on the punitive damages claim is the "clear and convincing evidence" rule. Ala. Code 1975, § 6-11-20. "Clear and convincing evidence" is defined in § 6-11-20(b)(4) as follows:
 "Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
[2] As previously noted, the trial court ruled as a matter of law that Vaughn's solicitation of the sex act after the police officer had left occurred while Vaughn was acting outside the line and scope of his employment with Big B. This ruling has not been challenged on appeal and is, therefore, the law of this case. See Blumberg v. Touche Ross Co., 514 So.2d 922
(Ala. 1987). As Cottingham conceded in her brief, "in this appeal, this Court is only presented with the injuries caused before [Vaughn deviated from the line and scope of his employment]."
* Although Justice Ingram did not sit for oral argument in this case, he has listened to the tapes.