761 So.2d 981 (1999)
Regina MACHEN
v.
CHILDERSBURG BANCORPORATION, INC., et al.
1980519.
Supreme Court of Alabama.
December 17, 1999.
Rehearing Denied March 3, 2000.
*982 Wanda J. Batson and Lister H. Proctor of Proctor & Vaughn, Sylacauga, for appellant.
Lyman H. Harris and Jason A. Shamblin of Harris, Cleckler & Hollis, Birmingham, for appellees.
LYONS, Justice.
The plaintiff, Regina Machen, appeals from a summary judgment in favor of the defendants Childersburg Bancorporation, Inc. ("the bank"); the bank's chief operations officer, Louie Henry ("Henry"); and the bank's chief executive officer, Dan Cleckler ("Dan"). These three defendants will sometimes hereinafter be referred to collectively as "the bank defendants." We reverse and remand.
The evidence, viewed in a light most favorable to Machen, suggests the following: Machen was employed by the bank as a loan processor from August 1995 until August 1996. She worked under the direct supervision of Robert M. Cleckler ("Robert"), who was the bank's president, personnel manager, and loan officer, and a member of its board of directors. Machen testified that shortly after she began working at the bank, Robert started making lewd and sexually suggestive comments to her and that he touched her in an offensive manner. Machen testified that in November 1995 she reported the comments and the touchings to Henry, the bank's chief operations officer. Machen further testified that she informed Henry that she had been sexually abused as a child and that she was sensitive to, and offended by, Robert's conduct.
Henry testified that he did not remember the particulars of his conversation with Machen, but that he specifically recalled Machen's testifying that he had made a comment to her about Robert's conduct in the past. Henry testified that he did not confront Robert with the allegations, but that he conveyed his concerns to Dan, the bank's chief executive officer. Dan is Robert's *983 brother. Henry stated that he also informed Dan that Machen had said she had been sexually abused as a child.
Dan testified that Henry came to him and told him in general terms about some inappropriate remarks Machen said Robert had made. Dan testified that he approached Robert and told him, "Whatever you said, it was taken inappropriately. You need to be careful, and we don't need that kind of instance to happen. You know we've got a policy against that. You need to be aware of it." No written reprimand was made concerning the complaint.
Machen testified that Henry promptly reported back to her and informed her that he had discussed her complaint with Dan, that Dan had discussed the situation with Robert, that "hopefully" the conduct would not happen again, and that any future similar conduct would result in Robert's dismissal. Machen further testified that Henry remarked, "[Dan] said this has happened before." Henry testified that he told Machen to let him know if she had any more problems with Robert.
Machen testified that for some time after she reported the harassment, Robert acted very seriously and professionally toward her. She testified, however, that her job duties did not change and that she continued to work closely with Robert. Machen further testified that no one at the bank conducted a follow-up investigation with her to determine whether the harassment had stopped.
Machen testified that in March 1996, Robert resumed making comments to her with sexual overtones. Machen did not report the comments to anyone working in bank management. She testified that what she described as the "icing on the cake" occurred on August 2, 1996; she said that on that day Robert grabbed her wrist, pulled her into his lap, and began rubbing her thighs. Machen testified that she did not report the incident to anyone working in bank management. Machen stated that, instead, she told her husband and that she and her husband both agreed that she would remain at the bank until the end of the following pay period so that she could leave with a "full" paycheck. On August 9, 1996, Machen left a note on Dan's desk, telling him that she had quit. Machen's husband subsequently telephoned Henry and explained to him why Machen had quit. Approximately two weeks later, Dan sent a letter to Robert, which stated:
"On August 9, 1996, ... Henry received a call from Steve Machen, husband of our employee Regina Machen, accusing you of sexual harassment in an incident with her several days earlier. When Mr. Henry and I asked you about this incident you indicated that you had been indiscreet by gesturing to Ms. Machen that she should sit in your lap which she did. You also stated that you made no remarks or touched her in any way.
"You are aware that our employee policy addresses sexual harassment (see pages 4 & 5). I recommend that you reread this section and be aware of the consequences that such behavior could lead to."
Robert continued to work as president of the bank until April 1, 1997; he retired that date, at age 56.
On April 24, 1997, Machen sued the bank, Henry, Dan, and Robert, alleging, among other things, assault and battery, invasion of privacy, and the tort of outrage. All the claims arose from Robert's alleged sexually harassing conduct. Machen sought to have the bank defendants held vicariously liable for Robert's conduct, and she also alleged that the bank defendants had negligently or wantonly investigated her claim and had negligently or wantonly trained, supervised, and disciplined Robert.[1]
*984 The bank defendants filed a joint motion for a summary judgment, which the trial court granted. Robert filed a separate motion for a summary judgment, which the trial court denied. After the trial court entered an order pursuant to Rule 54(b), Ala. R. Civ. P., making the summary judgment in favor of the bank defendants final, Machen appealed.[2]
When reviewing the disposition of a motion for a summary judgment, this Court uses the same standard of review the trial court uses "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Blackwood v. Davis, 613 So.2d 886 (Ala.1993).
In Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885, 889 (Ala.1995), this Court stated:
"For an employer to be held liable for the intentional torts of its agent, the plaintiff must offer evidence (1) that the agent's wrongful acts were committed in the line and scope of the agent's employment; or (2) that the acts were committed in furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts." Potts v. BE & K Constr. Co., 604 So.2d 398, 400 (Ala. 1992).
In Potts, this Court stated:
"The employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or ... done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or *985 ratifies the employee's conduct after it learns of the action."
604 So.2d at 400.
The evidence did not demonstrate that Robert's alleged acts of misconduct were committed in the line and scope of his employment with the bank or that they were committed in furtherance of the bank's business. See Doe v. Swift, 570 So.2d 1209 (Ala.1990); Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989); and Joyner v. AAA Cooper Transp., 477 So.2d 364 (Ala.1985). Instead, the evidence demonstrates that Robert's alleged acts were aimed merely at satisfying his own lustful desires. Our discussion is, therefore, limited to following dispositive issues: (1) whether Machen presented substantial evidence that the bank defendants participated in, authorized, or ratified the alleged acts of misconduct after learning of them and (2) whether Machen presented substantial evidence to support her claims of negligent or wanton investigation, training, supervision, and discipline.
In order to show that the bank defendants ratified Robert's behavior, Machen must present substantial evidence indicating that they either expressly adopted Robert's alleged conduct or that they implicitly approved of it. Potts, 604 So.2d at 400. In Potts, this Court further stated that in addition to proving the underlying tortious conduct of an offending employee, a complaining employee must show:
"(1) [that her employer] had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take `adequate' steps to remedy the situation."
Id. at 400 (emphasis added).[3]
It is undisputed that the bank defendants had actual knowledge of Robert's alleged misconduct. Based upon their knowledge, a factfinder could find that they knew, or should have known, that such conduct on Robert's part, if proven, could constitute a common-law tort.[4] The bank had policies and procedures prohibiting sexual harassment. Henry testified that he actually drafted them; Robert testified that he proofread them. They read:
"It is the policy of [the bank] to provide staff members a work environment free of any form of discrimination, including sexual harassment.
"In addition, Title VII of the 1964 Civil Rights Act prohibits discrimination based on race, color, sex, national origin, religion and pregnancy. Under both our policy and the equal employment law, it is illegal for a staff member to engage in unwelcome sexual advances, request for sexual favors, verbal or physical conduct of a sexual nature, or any other verbal conduct that might be *986 construed as a racial, sexual, ethnic or religious slur. Any behavior which would be perceived to be sexually offensive is under the purview of this policy. Such behavior, whether committed by a supervisor or co-worker, is grounds for disciplinary action, up to and including termination."
While Robert's conduct did cease for a time after the initial oral reprimand, it later resumed. Machen resigned from her job after, she says, Robert had pulled her into his lap and touched her thighs. Contrary to what Henry said in his initial discussion with Machen, i.e., that any similar future conduct would result in Robert's dismissal, the bank, after learning of the later incident, chose simply to write a memo to Robert suggesting that he review the bank's policies on sexual harassment. Robert continued to work at the bank until he retired.
The bank defendants argue that, after learning of Robert's conduct, they took prompt disciplinary action and that the action was adequate, as a matter of law. In Potts, this Court stated:
"[I]f the undisputed evidence shows that the employer, as soon as it was practical to do so after learning of the conduct, took steps to stop the tortious conduct and the tortious conduct stopped, the steps taken by the employer were adequate, as a matter of law.
"Conversely, evidence that an employer, after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate."
Id. at 401 (emphasis in Potts).
We conclude, based on the following unique circumstances of this case, that a genuine issue of material fact exists as to whether the disciplinary action taken by the bank defendants, i.e., the oral reprimand, was, in fact, reasonably calculated to stop the conduct: (1) the relatively small size of the bank; (2) the status of the individual defendants; (3) the relationship between the individual defendants; (4) the fact that Robert was given only an oral reprimand by his brother after the initial complaint; (5) the questionable sufficiency of the content of the oral reprimand, particularly in light of Machen's history of abuse as a child; (6) the fact that Robert continued to supervise Machen after she had made the initial complaint; (7) Machen's testimony that Henry told her that Dan had said Robert had committed such acts in the past; and (8) Machen's testimony that the misconduct ultimately resumed after the initial reprimand. Given these circumstances, a jury could conclude that the bank defendants should have known that a more stringent method of discipline was necessary in order to halt the tortious conduct.[5]
Finally, we address the issue whether Machen presented substantial evidence to support her claims that the bank defendants negligently or wantonly failed to properly investigate, train, supervise, and discipline Robert.[6] In Thompson v. *987 Havard, 285 Ala. 718, 723, 235 So.2d 853 (1970), this Court stated:
"In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care."
After reviewing the evidence in a light most favorable to Machen, we conclude that the evidence creates a genuine issue of material fact as to whether the bank defendants took adequate steps to investigate Machen's complaint of sexual harassment and to train bank employees, including Robert, regarding the bank's policies prohibiting sexual harassment, and whether they took appropriate disciplinary measures to remedy the situation; and, if they did not, whether their failure was the result of negligence or wantonness. It is undisputed that when Machen initially reported her allegations to Henry, in November 1995, Henry chose not to investigate them. He, instead, turned the matter over to Dan, who is Robert's brother. Dan orally reprimanded Robert. No written report was made. Neither Henry nor Dan conducted any follow-up investigation with Machen to determine whether the harassment had stopped. As previously noted, the tortious conduct ceased for a period and then resumed. A jury could conclude that had the bank defendants properly investigated the incident, they would not have allowed Robert to remain in a position where he could abuse his authority. A jury could further conclude that had the bank defendants monitored and/or supervised the situation more carefully, Robert would not have repeated the acts of misconduct.
We further conclude that Machen presented substantial evidence to sustain a claim alleging wanton investigation, training, supervision, and discipline. In Alfa Mutual Insurance Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998), this Court stated: "To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." "Wantonness" is defined by statute as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code 1975, § 6-11-20(b)(3). In Roush, citing Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala.1994), this Court described wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Roush, 723 So.2d at 1256.
As previously noted, when the tortious conduct resumed, the bank defendants *988 chose simply to write a memo to Robert suggesting that he review the bank's policies on sexual harassment. This subsequent disciplinary action was contrary to Henry's initial statement to Machen that any future similar conduct would result in Robert's dismissal. A jury could conclude from the unique circumstances of this case (especially the prominence of the alleged perpetrator) that the bank defendants consciously chose to minimize the situation.
Accordingly, we reverse the summary judgment in favor of the bank defendants and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, and BROWN, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from those aspects of today's decision reversing the bank defendants' summary judgment on Machen's claim on the tort of outrage and on all of her claims on the theory of vicarious or respondeat superior liability. I further respectfully dissent from the reversal insofar as it puts the bank defendants to trial on the theories of negligent or wanton failure to train, to supervise, or to discipline the defendant Robert, ostensibly to prevent him from assaulting and battering Machen, invading her privacy, or committing outrage against her.
The tort of outrage is defined and explained in Busby v. Truswal Systems Corp., 551 So.2d 322, 324 (Ala.1989):
"The tort of outrageous conduct was first recognized by this Court in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.[1980]), in which the Court held that `one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.' Id. at 365. In order for a plaintiff to recover, the conduct of the defendant must be `so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Id."
The Busby Court explains that "[t]he tort of outrage provides a remedy for `extreme and outrageous conduct' [citation omitted], and so should not be the basis for vicarious or respondeat superior liability except in the most compelling circumstances." 551 So.2d at 327. I respectfully submit that the evidence against the bank defendants does not meet this test, no matter what may be the outcome of the pending claims against Robert.
The majority correctly observes that "[t]he evidence did not demonstrate that Robert's alleged acts of misconduct were committed in the line and scope of his employment with the bank or that they were committed in furtherance of the bank's business." 761 So.2d at 985. Thus, Machen's claims on the theory of respondeat superior require substantial evidence that the bank defendants ratified some underlying tort committed by Robert. The law of ratification is succinctly stated in Alabama Pattern Jury Instruction: Civil (2d ed.1993), Instruction 3.12:
"RATIFICATION OF ACTS BY PRINCIPAL
"A principal can be held responsible for an act of his agent, which was committed beyond the scope of the agent's authority by subsequently ratifying such act. Ratification by the principal of an act of his agent requires an intent on the part of the principal to ratify such act. This intention may be express or implied, and may be inferred where there is evidence intending [sic] to show that the principal, with adequate knowledge of the facts and circumstances, so conducted himself as to indicate his purpose *989 to confirm or adopt the unauthorized act of his agent." (Emphasis added.)
The record contains no evidence that the bank defendants harbored a "purpose to confirm or adopt" (emphasis added) any tort committed by Robert.
The majority cites Potts v. BE & K Constr. Co., 604 So.2d 398 (Ala.1992), for the holding that substantial evidence of a recurrence of either invasion of privacy, assault and battery, or outrage, or a combination of two or more of these torts (the majority does not specify) committed by one employee against another after the other has reported to the employer the commission of one or more of these torts, not necessarily the same one or combination (again, the majority does not specify), by the allegedly offending employee, creates a jury question of whether the employer's measures to prevent a recurrence were adequate. Potts does, indeed, seem to hold that substantial evidence of such a recurrence creates such a jury question for the purpose of determining whether the employer ratified the allegedly offending employee's conduct and thereby incurred vicarious liability to the allegedly offended employee on the theory of respondeat superior. Potts expressly limits its holding to the issue of ratification for the purpose of establishing vicarious liability. The holding of Potts in this regard contradicts Pattern Jury Instruction 3.12, already quoted, which seems to be the better statement of the law. This Potts holding should be abandoned and certainly should not be extended to the direct liability theory that the employer tortiously failed to train, to supervise, or to discipline the allegedly offending employee. This Court should not hold, as it apparently does, that substantial evidence of a recurrence is enough to create a jury question on whether the employer tortiously failed to train, to supervise, or to discipline the allegedly offending employee.
In this case, Machen complained only once to the bank. The bank counseled or reprimanded Robert. The "conduct" stopped for a while. After a single alleged recurrence, Machen quit and sued.
The rule that substantial evidence of a recurrence is enough to create a jury question on either vicarious liability or direct liability imposes an insuperable burden on employers. The only way an employer can with certainty prevent a recurrence is to discharge the accused employee after the first report. Separating the two employees physically will not prevent a recurrence by telephone or other remote communication. But discharging an employee on the basis of a report, which may be false or exaggerated, would be, in most cases, grossly unfair and impractical and, indeed, legally hazardous itself.
The majority, in footnote 1, correctly observes:
"It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. See, e.g., Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala.1998); Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885 (Ala.1995); Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993); Potts v. BE & K Constr. Co., 604 So.2d 398 (Ala.1992)."
761 So.2d at 983-84 n. 1. Yet Potts, supra, states:
"[W]e expressly decline to hold that what constitutes sufficient evidence of ratification by an employer in a case of sexual harassment would be sufficient evidence of ratification in cases involving other intentional torts."
Id. at 402. By creating a unique law for ratification in sexual harassment cases, the Potts court does begin to create an independent cause of action for sexual harassment. By promoting the single-recurrence rule from Potts, today's decision furthers the creation of this new tort.
*990 The conduct commonly branded as sexual harassment rarely requires any isolation or leaves any tangible evidence. Thus a person may charge it falsely with little or no danger of being positively proven wrong. Commentators have aptly observed that the crime of rape, which does require isolation and frequently does leave tangible evidence, is easy to charge and hard to defend. Sexual harassment is far worse in this regard.
Today's decision promoting the single-recurrence rule of Potts impales an employer on the horns of a dilemma when the employer is confronted with a report of sexual harassment. Either the employer must discharge the accused employee, even though he or she may be entirely innocent, and must incur all the risks and losses of such a discharge; or the employer must risk an ensuing claim, even a false claim, of a single recurrence, which will actually go to the jury. True, if the jury finds the claim false, the employer will win a defense verdict. But, at the cost of tens of thousands of dollars for defense, and with no way to prove positively that the claim was brought in bad faith and that the plaintiff should be held accountable, the defense victory will be nothing but an exorbitant loss.
NOTES
[1] It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. See, e.g., Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala.1998); Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885 (Ala.1995); Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993); Potts v. BE & K Constr. Co., 604 So.2d 398 (Ala. 1992).
[2] We note that because the court denied Robert's motion for summary judgment, Machen's claims against Robert, alleging assault and battery, invasion of privacy, and the tort of outrage, are still pending before the trial court. Justice Johnstone, in his dissent, states that he would affirm the summary judgment as it related to Machen's claim seeking to have the bank defendants held vicariously liable for the tort of outrage. However, the bank defendants do not assert in this Court that the trial court's denial of Robert's motion for summary judgment was erroneous as an alternative reason for our affirming the summary judgment entered in their favor on the separate ground of insufficient evidence of ratification and negligent or wanton investigation, training, supervision, and discipline. This Court can affirm a summary judgment on grounds other than those relied on by the trial court, even if the appellee has not filed a cross appeal. McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14, 25 (Ala.1986). However, because the bank defendants have not asserted in this Court the alternative ground for affirmance, and because, by reason of the denial of Robert's motion for summary judgment, there will be a trial on the same facts on Machen's other claims, we deem it inappropriate at this stage of the proceedings to reach the question whether Machen has a tort-of-outrage claim.
[3] Justice Johnstone in his dissent embraces language in Alabama Pattern Jury Instructions: Civil (2d ed.1993), Instruction 3.12 (that instruction would require proof of a purpose to confirm or adopt as a prerequisite to ratification), and he states a preference for the rule stated in that instruction over the rule of Potts. This Court in Potts limited its holding to facts involving sexual harassment, stating, "[W]e expressly decline to hold that what constitutes sufficient evidence of ratification by an employer in a case of sexual harassment would be sufficient evidence of ratification in cases involving other intentional torts." 604 So.2d at 402. We decline to overrule Potts, and the rule of Potts therefore prevails over a pattern jury instruction to the extent that there is any inconsistency between the two. See State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998); Ex parte Wood, 715 So.2d 819 (Ala.), cert. denied, 525 U.S. 1042, 119 S.Ct. 594, 142 L.Ed.2d 536 (1998). Further, Justice Johnstone's dissent ascribes to Potts a field of operation in regard to the separate issue of the sufficiency of the evidence of a tortious failure to train, supervise, or discipline. However, Potts deals exclusively with ratification, and our treatment of it here is confined to that issue.
[4] See note 1.
[5] Justice Johnstone's dissent criticizes Potts for its holding that a recurrence is sufficient to create a jury question as to the adequacy of the employer's steps to remedy, stating that that holding "imposes an insuperable burden on employers." 761 So.2d at 989. The dissent then states that the only way to prevent a recurrence, with certainty, is to discharge all first offenders. But, is it fair to condemn a rule simply because it creates a jury question, which could go either way? That circumstance cannot reasonably be described as imposing "an insuperable burden." Only by trampling on the constitutionally protected right to trial by jury, Art. I, § 11, Ala. Const. of 1901, could this Court give a defendant the insulation promoted by the dissent.
[6] We do not address in this opinion the question whether Henry and Dan had the authority to investigate, train, supervise, and discipline Robert. As to these claims, the bank defendants argue only that they were not negligent or wanton in investigating, training, supervising, or disciplining Robert because, they say, upon learning of Robert's alleged improper conduct, they "promptly addressed the situation and put a stop to it," and because, they say, they did not know that Robert allegedly had resumed the conduct. Neither Henry nor Dan has argued, either in the trial court or on appeal, that he had no authority or control over Robert.