Keystone Automotive Industries, Inc. ("Keystone"), sued John William Stevens, a former employee, in the Mobile Circuit Court seeking to enforce a noncompetition agreement. Keystone filed a motion seeking a partial summary judgment on the issue of liability. Stevens filed a response to Keystone's motion and an alternative motion for a summary judgment. Following an evidentiary hearing, the trial court entered a summary judgment in favor of Stevens. Keystone appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975.
Keystone produces, repairs, and refabricates certain automobile parts, including bumpers, selling them to the general public and to automotive-repair businesses. Keystone's Mobile operation distributes to customers in the Alabama and Mississippi Gulf Coast areas as well as the Florida Panhandle. In 1996, Keystone purchased the retail sales department of After Market Parts Supply, Inc. ("AMPS"), a bumper-refabrication business located in Mobile. At the time of the purchase, Stevens was a sales manager at AMPS, and, in order to retain employment with Keystone, Stevens was required to sign an employment contract containing a noncompetition clause; the clause provided that for two years following the termination of his employment with Keystone Stevens would
 "not plan, organize or work for a competitive business, if the loyal and complete fulfillment of the duties of the competitive employment would demand by their very nature that [Stevens] reveal Keystone's secrets. [And not] contact any customers of Keystone for the purpose of soliciting their business or making a request for bid information."
Stevens remained employed with Keystone from August 1996 to March 2000.
Stevens initially worked as a sales manager at Keystone. However, because of an increase in problems in the production department, Stevens was transferred to that department in January 2000. When his requests to return to the sales department were refused, Stevens left Keystone and organized his own company, Precision Bumpers, L.L.C., which sells bumpers to retailers. Several of Precision Bumper's *Page 115 
customers include those retailers to whom Stevens sold products while he worked at AMPS and, later, while he was employed by Keystone.
It is well settled under Alabama law that the party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. If the moving party meets its burden, "`the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.'" Cremeens v. City of Montgomery, 779 So.2d 1190, 1191
(Ala. 2000) (quoting Machen v. Childersburg Bancorporation, Inc.,761 So.2d 981, 984 (Ala. 1999)). Evidence is substantial if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). In reviewing a motion for a summary judgment, the court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).[1]
Section 8-1-1, Ala. Code 1975, provides, in pertinent part:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) . . . [O]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the . . . employer carries on a like business therein."
Section 8-1-1 expresses the public policy of Alabama that contracts restraining employment are disfavored. James S. Kemper Co. v. Cox Assocs., 434 So.2d 1380, 1384 (Ala. 1983). Courts, however, will enforce a covenant not to compete if:
"(1) the employer has a protectable interest;
 "(2) the restriction is reasonably related to that interest;
 "(3) the restriction is reasonable in time and place; [and]
 "(4) the restriction imposes no undue hardship [on the employee]."
DeVoe v. Cheatham, 413 So.2d 1141, 1142 (Ala. 1982); see also Restatement(Second) of Contracts § 188, Comment B (1981). The person or entity seeking to enforce the covenant has the burden of showing that it is not void under § 8-1-1, Ala. Code 1975. Calhoun v. Brendle, Inc.,502 So.2d 689, 693 (Ala. 1986).
Regarding the first factor, our Supreme Court has explained that in order to have a protectable interest, the employer must possess "`a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.'" DeVoe,413 So.2d at 1142 (quoting Cullman Broad. Co. v. Bosley, 373 So.2d 830, 836
(Ala. 1979)). Moreover, "[a] protectable interest may exist when an employee is `in a position to gain confidential information, [to gain] access to secret lists, or to develop a close relationship withclients.'" Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564, 566 *Page 116 
(Ala. 1992) (quoting DeVoe, 413 So.2d at 1143) (emphasis added).
During the evidentiary hearing, the trial court explained that, based on the testimony by Stevens and other employees of Keystone, it did not appear that Keystone had a protectable interest. Stevens testified that he gained his client relationships and sales knowledge before he was employed by Keystone. He further testified that throughout his adult life he had worked in some aspect of automobile repair and sales and, as a result, had developed a network of contacts and associates. According to a manager for Keystone, Stevens had dealt with the same customers he had worked with before his employment with AMPS and Keystone. The manager also testified that Stevens's knowledge concerning the customer base and customer needs was acquired before Stevens's employment with Keystone and that Stevens's duties and responsibilities at Keystone were the same as they had been at AMPS. Based on this testimony, the trial court concluded that Keystone did not have a protectable interest that justified enforcement of the noncompetition agreement.
The evidence indicates that Stevens maintained close client relationships. Although Stevens may have initially met and established relationships with those customers while working at AMPS, there was evidence tending to indicate that he was provided the means to nurture, maintain, and further develop those relationships during the approximately four years he was employed with Keystone. The testimony established that Stevens's job involved developing relationships with customers by, among other things, taking them to lunch and visiting retail body shops. Stevens explained that his job involved helping Keystone retain AMPS's customers. A manager for Keystone testified that Keystone gained new customers during Stevens's tenure at the company and that Keystone sold different products than were sold by AMPS. Testimony also indicated that because Stevens was not working as a full-time salesman before his employment with AMPS, he likely made new contacts while working for AMPS and Keystone and formed stronger relationships with those customers he already knew. Moreover, the manager for Keystone further explained that when the sales representatives for the various companies with whom Keystone did business changed, Stevens knew who to contact because he was aware of who were the purchasing agents for each retailer. Finally, Stevens was aware of the purchase amounts for each Keystone customer, the amount owed by each Keystone customer, and the rebates and discounts Keystone gave particular customers. Based on the evidence presented, there exists a genuine issue of material fact as to whether Keystone had a protectable interest. The trial court erred in concluding otherwise.
The summary judgment in favor of Stevens is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] This standard for reviewing a summary-judgment motion is applicable in the present case even though the trial court held an evidentiary hearing. See Middaugh v. City of Montgomery, 621 So.2d 275 (Ala. 1993).