922 So.2d 899 (2004)
Kenneth P. QUINLAN
v.
Eric JONES.
No. 2030621.
Court of Civil Appeals of Alabama.
October 1, 2004.
*902 Kenneth P. Quinlan, pro se.
Troy King, atty. gen., and Andrew Hamilton Smith, asst. atty. gen., for appellee.
PER CURIAM.
In September 2003, Kenneth P. Quinlan, proceeding pro se, sued Eric Jones, alleging that Jones had committed an assault and battery on him on November 25, 2002, and on December 30, 2002, and that Jones had committed an assault on him on December 2, 2002.[1] Quinlan also alleged that Jones had wrongfully deprived him of his personal property on November 25, 2002, and on December 30, 2002; that claim was apparently brought pursuant to § 6-5-260, Ala.Code 1975.[2] Quinlan sought $3,000 in compensatory *903 damages, $50,000 in punitive damages, as well as $1,000 for the "loss of personal property." Quinlan is an inmate incarcerated at Bibb County Correctional Facility. Jones is employed at the facility as a correctional officer.
Jones answered and denied the material allegations in the complaint; Jones also asserted a number of defenses and affirmative defenses, including failure to state a claim upon which relief can be granted, sovereign immunity, and discretionary-function immunity.
Thereafter, Quinlan simultaneously filed a "Motion to Dismiss Defendant[, State of Alabama]" and a "Response to [Jones's] Answer." In his motion to dismiss the State of Alabama as a defendant, Quinlan alleged that the State had been inadvertently or mistakenly served as a defendant; that he did not intend to make the State a defendant; and that he was suing Jones "in his individual capacity in trespass against the person [sic] personal injury tort."[3] The trial court granted Quinlan's motion and dismissed the State as a defendant.
In his response to Jones's answer, Quinlan alleged, among other things, that "the issue of whether Jones'[s] conduct was committed willfully, wantonly or intentionally is a question for the jury." Quinlan attached five affidavits to his response; four of those affidavits were from other inmates, and those four affidavits contained virtually identical language:
"I am presently incarcerated as a state prisoner in the ... Bibb County Corr[ectional] Facility....
"On or about November 25, 2002, I personally witnessed ... Jones assault... Quinlan. I have personally observed... Jones choke, strike, and shove Quinlan into a metal filing cabinet while Quinlan was handcuffed and cussing Quinlan the entire time he was assaulting him."[4]
Quinlan also submitted his own affidavit, stating:
"1. On or about November 25, 2002, I was physically and verbally assaulted by ... Jones in that he assaulted me while I was sitting in a chair within the shift commander's office for allegedly not getting my hair cut. He grabbed me and began slamming me into a metal filing cabinet directly behind the chair, then dragging me to my feet and choking me until I lost consciousness. Jones slammed handcuffs upon my wrists which cut me to the bone and drew blood while referring to me as a `piece of white s* * *.'
"Jones hit me in the face with such force that he broke my dental retainer, Jones tore my radio headset from around my neck breaking it and dragging the metal pieces across my neck and face causing lacerations and bleeding. Jones took my radio after he assaulted me. Alabama Regulation and Policy allow me to have a radio.

*904 "Jones placed a falsified disciplinary [sic] in my institutional file for allegedly disobeying a direct order in an attempt to justify his physical and verbal maltreatment of me in violation of Title 14.
"2. On or about December 2, 2002,... Jones once again threatened me with physical violence and verbally threatened me.
"3. On or about December 30, 2002,... Jones once again physically and verbally assaulted me by hitting me in the face. Jones also confiscated and destroyed my legal papers, sacred religious Native American spiritual materials, personal letters and photos, Long Distance Dad's [sic] class papers [that] we are allowed to have in our possession.
"4. I am prepared to offer the testimony of Special Agent Ricky Crosby with the F.B.I. [Federal Bureau of Investigation],... Tuscaloosa, Ala....."
Thereafter, Jones filed a motion for a summary judgment pursuant to Rule 56, Ala. R. Civ. P.; in his motion, Jones alleged, among other things, that he was immune from suit in his individual capacity based on state-agent immunity.[5] In support of his motion, Jones submitted a brief, his own affidavit, and the Alabama Department of Corrections ("ADOC") incident reports from November 25, 2002, and December 30, 2002.
Jones's affidavit states, in pertinent part:
"In the complaint, inmate ... Quinlan... alleges that on the 25th day of November 2002, that I, committed the act of assault and battery on him; engaged in wanton, reckless and malicious conduct; screamed, cursed and threaten[ed] to kill him; choked and st[r]uck him in the face with such force as to cause [Jones] to lapse into a state of semi-consciousness and to cause swelling in his testicles and that I took and destroyed a radio and headphone that belonged to him. Inmate Quinlan also alleges assault and battery against him on December 2, 2002[,] and that on December 30, 2002, I deprived him of his personal property to include alleged items such as Native American spiritual possessions, family photos, personal letters and various legal documents. I categorically deny these allegations.
"I was acting within the parameters of the rules and regulations that govern inmate/officer interaction. I acknowledge using reasonable force on inmate Quinlan as he failed to obey a verbal command then became belligerent and argumentative."
Both of the incident reports attached to Jones's motion for a summary judgment included a summary of the facts relating to those incidents and were signed by Jones; relevant portions of those reports are discussed later in this opinion. Attached to the November 25, 2002, incident report was a copy of the ADOC treatment record pertaining to Quinlan's injuries, dated November 25, 2002, and a copy of the ADOC disciplinary report for that incident. The *905 ADOC treatment record indicated that Quinlan had two scratches on the left side of his face, one scratch on his neck, a cut on his left wrist, and redness on both knees. The disciplinary report for the November 25, 2002, incident stated that Quinlan had been found guilty of "rule # 56 ... Failure to Obey a Direct Order of a DOC Official from regulation # 403" and that "[t]he Hearing Officer finds that on 11/25/02 ... inmate Quinlan did refuse several lawful orders from ... Jones to sit in the Shift Office until ... a barber could be summoned to cut his hair. The Hearing Officer finds inmate Quinlan guilty as charged."
Attached to the December 30, 2002, incident report was a copy of the ADOC disciplinary report for that incident. The disciplinary report for the December 30, 2002, incident stated that Quinlan had been found guilty of "rule # 50 ... Being in an Unauthorized Area from regulation # 403" and that "[t]he Hearing Officer finds that inmate Quinlan did attempt to go to the west side of the camp without obtaining authorization from the security staff. The Hearing Officer finds inmate Quinlan guilty as charged."
In Jones's brief in support of his summary-judgment motion, Jones included the following statement of facts:
"Quinlan alleges that between November 2002 and December 2002, ... Jones three times attacked him twice (sic) and destroyed his personal property. ADOC official records reflect only one instance of a physical altercation between... Jones and Quinlan during this time. On November 25, 2002, Quinlan, who was under investigation for failing to get a haircut in accordance with ADOC regulations, disobeyed four orders from ... Jones to take a seat in the shift office. After refusing to follow the order, Quinlan began throwing things around the office, at which point ... Jones physically restrained Quinlan. After Quinlan complied with ... Jones'[s] order to place his hands behind his back, Quinlan was handcuffed and taken to the health care unit. At the health care unit, Quinlan did not complain of any injury, but said, `I'm here to get a body chart.' The screening nurse noted he was in good condition upon arrival, and though she observed a few scratches on Quinlan, she noted he had no visible signs of distress.
"The only other recorded incident between Quinlan and ... Jones occurred after Quinlan attempted to go to an unauthorized area of the prison and was detected by ... Jones.... Jones had Quinlan brought in for questioning, and the materials in Quinlan's possession were briefly confiscated during this time, but were later returned to him."
(Citations to exhibits omitted.)
In response to Jones's summary-judgment motion, Quinlan filed the following: 1) a motion to strike Jones's summary-judgment motion, alleging that Jones was not entitled to legal representation from the Attorney General's Office, 2) another affidavit of Quinlan, essentially restating his claims and claiming that Jones's actions regarding each incident were done "intentionally, maliciously, and wantonly," 3) a copy of ADOC's "Standards of Conduct" for its employees, claiming that Jones's actions were in violation of those standards, 4) a "Motion for Order Declaring [Jones] Not Immune to Suit," 5) a motion for a partial summary judgment regarding his allegation that Jones was not entitled to legal representation from the state Attorney General's Office, and 6) a "Motion for Order and Opinion Interpretating Title 36, § 36-21-1[,] Code of Alabama *906 1975."[6]
Thereafter, on February 24, 2004, the trial court entered a judgment granting Jones's summary-judgment motion; that judgment did not include any findings of fact or conclusions of law. Quinlan timely appealed to the supreme court; that court transferred the case to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
It is well-settled under Alabama law that the party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. If the moving party meets its burden, "`the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.'" Cremeens v. City of Montgomery, 779 So.2d 1190, 1191 (Ala. 2000) (quoting Machen v. Childersburg Bancorporation, Inc., 761 So.2d 981, 984 (Ala.1999)). Evidence is substantial if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a motion for a summary judgment, the court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
On appeal, proceeding pro se, Quinlan contends that the trial court erred in granting Jones's summary-judgment motion and in failing to grant Quinlan's partial-summary-judgment motion, because, he says, 1) Jones is not entitled to state-agent immunity, 2) Jones should be held liable for physically and verbally assaulting him and for taking his personal property and destroying it, and 3) Jones was not entitled to legal representation from the state Attorney General's Office.[7]
In Ex parte Cranman, 792 So.2d 392 (Ala.2000) (a plurality opinion that was adopted by a majority of the supreme court in Ex parte Butts, 775 So.2d 173 (Ala.2000)), our supreme court restated the rule governing state-agent immunity as follows:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, *907 or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405.
In Howard v. City of Atmore, as modified on denial of rehearing, 887 So.2d 201 (Ala.2003), our supreme court stated,
"`[w]e have established a "burden-shifting" process when a party raises the defense of [S]tate-agent immunity.' Giambrone v. [Douglas], 874 So.2d [1046,] 1052 [(Ala.2003)]. Under this process, [Jones] `bear[s] the burden of demonstrating that [Quinlan's] claims arise from a function that would entitle [him] to immunity.' 874 So.2d at 1052. `If [he makes] such a showing, the burden then shifts to [Quinlan], who, in order to deny [Jones] immunity from suit, must establish that [Jones] acted willfully, maliciously, fraudulently, in bad faith,' 874 So.2d at 1052, or that he `was not exercising his ... judgment in the manner set forth in the examples in Cranman.' Ex parte Hudson, 866 So.2d [1115,] 1118 [(Ala.2003)]."
Howard v. City of Atmore, 887 So.2d at 205.
In the present case, Jones made a showing that he was performing functions falling within categories (3) and (4) of the Cranman restatement at the times he allegedly assaulted and battered Quinlan and at the times he allegedly wrongfully deprived Quinlan of his personal property. Thus, the burden shifted to Quinlan to rebut that showing by presenting substantial evidence tending to establish that Jones acted "willfully, maliciously, fraudulently, in bad faith," or that "he was not exercising his ... judgment in the manner set forth in the examples in Cranman." Howard v. City of Atmore, 887 So.2d at 205. Based on our analysis below, we conclude that Quinlan failed to rebut Jones's showing that Jones was entitled to state-agent immunity as to all claims except to the alleged November 25, 2002, assault and battery.
Regarding the alleged November 25, 2002, assault and battery, Jones stated in his affidavit that he filed in support of his summary-judgment motion that he had used reasonable force on Quinlan after Quinlan became belligerent and argumentative regarding Jones's order to comply with the ADOC regulation for inmate haircuts. The November 25, 2002, incident report, also filed by Jones in support of his summary-judgment motion, indicated that after Quinlan was handcuffed no additional force was necessary. Quinlan, on the other hand, stated in his own affidavits in *908 opposition to Jones's summary-judgment motion that Jones began to physically assault him while he was sitting in a chair and that Jones continued to assault him after he was handcuffed. Although the statements made by Quinlan in his own affidavits were essentially restatements of the allegations Quinlan made in his complaint, see Harris v. Lombardi, 897 So.2d at 1139 ("In opposing ... [a] motion for a summary judgment, [Quinlan] cannot rely merely on the allegations made in his complaint," citing Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507 (Ala. 2002)), we cannot ignore the statements made by the four other inmates in their affidavits that they "personally witnessed... Jones assault ... Quinlan [and] personally observed ... Jones choke, strike, and shove Quinlan into a metal filing cabinet while Quinlan was handcuffed and cussing Quinlan the entire time he was assaulting him." Viewing the evidence in the light most favorable to Quinlan, which we are required to do in our review of a summary judgment, we cannot determine, as a matter of law, that a reasonable fact-finder might not find that Jones's actions were willful and/or malicious.[8] Thus, we conclude that Quinlan has presented substantial evidence that a genuine issue of material fact exists as to whether Jones committed the alleged November 25, 2002, assault and battery and, therefore, that Jones is not entitled to a summary judgment on the basis of state-agent immunity as to this incident. Therefore, we must conclude that the trial court erred in granting Jones a summary judgment as to the alleged November 25, 2002, assault and battery.
Concerning the alleged assault on December 2, 2002, and the alleged assault and battery on December 30, 2002, Jones, in his affidavit, denied that he had committed an assault and/or a battery on those occasions. The only evidence that Quinlan presented that supports his allegations that Jones committed an assault and/or a battery on Quinlan on those dates were statements made in Quinlan's own affidavits. Although Quinlan described in some detail the facts surrounding those alleged incidents, those statements were essentially restatements of the allegations he made in his complaint, and, as noted earlier, in opposing a summary-judgment motion, Quinlan cannot rely merely on the allegations made in his complaint. Lee L. Saad Constr. Co. v. DPF Architects, P.C., supra; Harris v. Lombardi, supra. We conclude that Quinlan failed to rebut Jones's showing that Jones was entitled to state-agent immunity in that Quinlan failed to present substantial evidence tending to establish that Jones acted "willfully, maliciously, fraudulently, in bad faith," or that "he was not exercising his ... judgment in the manner set forth in the examples in Cranman." Howard v. City of Atmore, 887 So.2d at 205. Accordingly, the trial court's summary judgment in favor of Jones as to the alleged assault on December 2, 2002, and the alleged assault and battery on December 30, 2002, is due to be affirmed.
Quinlan also alleged that Jones had wrongfully deprived Quinlan of his personal property on November 25, 2002, *909 and on December 30, 2002. In his own affidavit, Jones denied that he had wrongfully deprived Quinlan of his personal property on each of those dates. The November 25, 2002, incident report does not indicate that Jones took a radio from Quinlan on that date. The December 30, 2002, incident report indicates that although Jones took some personal property from Quinlan on that date, Jones returned Quinlan's personal property to Quinlan on that same date; Jones did not return items he determined did not belong to Quinlan. The only evidence that Quinlan presented regarding this claim were statements made in his own affidavit. However, those statements were essentially restatements of the allegations made in his complaint, and, as noted earlier, in opposing a summary-judgment motion, Quinlan cannot rely merely on the allegations made in his complaint. Lee L. Saad Constr. Co. v. DPF Architects, P.C., supra; Harris v. Lombardi, supra. We conclude that Quinlan failed to rebut Jones's showing that Jones' was entitled to state-agent immunity in that Quinlan failed to present substantial evidence tending to establish that Jones acted "willfully, maliciously, fraudulently, in bad faith," or that "he was not exercising his ... judgment in the manner set forth in the examples in Cranman." Howard v. City of Atmore, 887 So.2d at 205. Accordingly, the trial court's summary judgment in favor of Jones as to Quinlan's wrongful-deprivation-of-personal-property claim is due to be affirmed.
Regarding a state attorney general representing Jones in this case, we conclude that the statute cited by Quinlan, § 36-21-1, does not apply to the facts of this case. Section 36-21-1 provides:
"Any law enforcement officer of the State of Alabama who is sued or prosecuted for any act committed or done within the line and scope of his duties and authority will be reimbursed by the state for legal counsel fees paid, the fees of witnesses paid by him and costs of court he paid out in defending the civil action or prosecution; provided, that the total amount of such reimbursable expenses shall not exceed $2,000.00 and provided the committee established by this section approves such claim. The committee shall consist of two members of the House of Representatives named by the Speaker, two members of the Senate named by the President of the Senate and the Attorney General of Alabama. The members of the committee shall serve during their tenure in their respective offices without compensation. The acts of any three members shall constitute action by the committee. The committee shall elect a chairman from among its number and shall meet on the call of the chairman.
"As used in this section the term `law enforcement officer' means any person employed in the classified civil service of the state whose duties involve police work."
Thus, § 36-21-1 applies in instances where a state employee is seeking reimbursement for out-of-pocket legal expenses and not in instances, such as the one in this case, where the employee has not incurred any out-of-pocket legal expenses but instead is being represented by a state attorney general.
In his brief to this court, Jones cites two statutory provisions that, he says, permit a state attorney general to represent him in this case  § 36-1-6.1(c), Ala.Code 1975, and § 36-15-21, Ala.Code 1975. We agree with Jones. Section 36-1-6.1(c) provides:
"In any action brought in the courts of the State of Alabama or United States wherein a plaintiff seeks damages arising out of the negligent or wrongful acts *910 or omissions committed by state employees or agents of the state, ..., while in the performance of their official duties in the line and scope of their employment..., the plaintiff shall cause the Attorney General of the State of Alabama to be served with a copy of the suit against the employee, agent or servant of the board, agency, commission or department."
As noted in Strength v. Alabama Department of Finance, 622 So.2d 1283 (Ala. 1993):
"Section § 36-1-6.1 was enacted to protect the employees of the State of Alabama from liability `for certain wrongful acts or omissions committed while in the performance of their official duties,' Act No. 83-521, 1983 Ala. Acts 809, not to protect the State. Such provisions are calculated, inter alia, to `create a secure working environment wherein employees do not feel paralyzed in the performance of their duties for fear of being sued.' P. Harper, Statutory Waiver of Municipal Immunity Upon Purchase of Liability Insurance in North Carolina and the Municipal Liability Crisis, 4 Campbell L.Rev. 41, 72 (1981)."
Strength, 622 So.2d at 1288.
Section 36-15-21 provides, in pertinent part, that "[a]ll litigation concerning the interest of the state, or any department of the state, shall be under the direction and control of the Attorney General." Accordingly, we conclude that the trial court did not err in permitting a state attorney general to represent Jones in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, J., concurs.
YATES, P.J., concurs specially, with writing.
PITTMAN, J., concurs in the result, without writing.
CRAWLEY and MURDOCK, JJ., concur in the result in part and dissent in part, with writings.
YATES, Presiding Judge, concurring specially.
I write specially to address the requirements of the affidavits filed by a plaintiff under Rule 56(e), Ala. R. Civ. P., in response to a properly supported motion for a summary judgment filed by the defendant. The Alabama Rules of Civil Procedure facilitate a plaintiff's attempt to seek redress in the courts by allowing a plaintiff to plead a minimal amount of facts that will simply give the defendant notice of the complaint. The procedures for discovery are meant to provide the parties with all the facts that will be presented at trial or additional facts that are needed to defeat a properly supported motion for a summary judgment.
The Committee Comments on the 1973 Adoption of Rule 8, Ala. R. Civ. P., provide:
"Under this rule the prime purpose of pleadings is to give notice. Such common law concepts as stating the facts each party believes to exist and narrowing the issues that must be litigated are completely abandoned."
Rule 8 facilitates this purpose by requiring only that a complaint
"`contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' 5 Wright and Miller, *911 Federal Practice and Procedure: Civil 2d § 1216, pp. 156-159 (1990).
"In Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) Justice Black, speaking for a unanimous Court, disposed of a challenge to a complaint on the ground that it was too general and lacking in specific facts in the following statement:
"`The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim....'
"The federal interpretation has been adhered to by our Court. Thus, it has been said that the primary purpose of pleadings is to give notice and the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, but the provable set of facts entitling plaintiff to relief must be according to a cognizable theory of law. Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975)."
1 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated § 8.1 (3d ed. 1996).
In a case in which a complaint merely meets the minimum requirements of notice pleading, an affidavit asserting the same mere allegations asserted in the complaint would not likely rise to the level of substantial evidence necessary to defeat a properly supported motion for a summary judgment. However, in a case in which there is a complaint that is more detailed[9] than what is required under the rules of notice pleading,[10] an affidavit asserting the same allegations asserted in the complaint might rise to the level of substantial evidence required to rebut a properly supported summary-judgment motion. In the present case, I agree with the main opinion that the facts alleged in Quinlan's affidavits in opposition to Jones's motion for a summary judgment, with regard to Quinlan's claims of assault on December 2, 2002, and assault and battery on December 30, 2002, and with regard to Quinlan's claim of wrongful depravation of property, were insufficient to rebut Jones's showing that he was entitled to state-agent immunity.
CRAWLEY, Judge, concurring in the result in part and dissenting in part.
I concur in the judgment reversing the summary judgment in Jones's favor on Quinlan's assault-and-battery claim stemming from the alleged events of November 25, 2002. I must disagree, however, with the main opinion's reliance on Harris v. Lombardi, 897 So.2d 1136 (Ala.Civ.App. 2004), in which a majority of this court held that an inmate's affidavit filed in response to a defendant's summary-judgment motion was not sufficient to rebut *912 the defendant's showing that no genuine issue of material fact existed because the inmate's affidavit "basically restate[d] the allegations made in his complaint" and, therefore, that the inmate had merely relied on the allegations of his complaint, which he could not do under Rule 56(e), Ala. R. Civ. P. Harris, 897 So.2d at 1138 (emphasis added). As I explained in my dissent in Harris, an affidavit is not any less of an affidavit simply because it restates the facts that appear in the complaint. See Harris, 897 So.2d at 1140 (Crawley, J., dissenting) ("Harris did not merely rely on the allegations contained in his complaint. As required by [Rule 56(e)], he filed an affidavit in support of his version of the facts."). Thus, I do not agree that Quinlan's affidavits are deficient in any way or insufficient to rebut the evidentiary materials Jones submitted in support of his summary-judgment motion simply because they restate the allegations contained in his complaint.
In addition, I must dissent from the affirmance of the summary judgment in Jones's favor on Quinlan's assault claim stemming from the alleged threats made to him on December 2, 2002, Quinlan's assault-and-battery claim stemming from the alleged events of December 30, 2002, and Quinlan's deprivation-of-property claim. The main opinion again relies on Harris to determine that Quinlan failed to rebut Jones's showing that he was entitled to state-agent immunity on those claims because Quinlan's affidavit merely restates the allegations contained in his complaint. 922 So.2d at 908. I cannot agree that Jones is entitled to a summary judgment simply because Quinlan's affidavits restate the allegations contained in his complaint. See Harris, 897 So.2d at 1139 (Crawley, J., dissenting). Therefore, I must, as I did in Harris, determine whether Jones was entitled to state-agent immunity in order to decide whether the summary judgment in Jones's favor on Quinlan's assault-and-battery and deprivation-of-property claims should be affirmed.
"`Ex parte Cranman, 792 So.2d 392 (Ala.2000), recounts the evolution of State-agent immunity ...,' Ex parte Rizk, 791 So.2d [911,] 913 [(Ala.2000)], and restates the law on that topic:
"`We therefore restate the rule governing State-agent immunity:
"`A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"`(1) formulating plans, policies, or designs; or
"`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"`(a) making administrative adjudications;
"`(b) allocating resources;
"`(c) negotiating contracts;
"`(d) hiring, firing, transferring, assigning, or supervising personnel; or
"`(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, *913 counseling or releasing persons of unsound mind, or educating students.
"`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'
"Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (emphasis in original). `This restatement was adopted by our decisions in Ex parte Rizk, [supra,] and Ex parte Butts, 775 So.2d 173 (Ala.2000).' Ex parte Blankenship, 806 So.2d 1186, 1189 (Ala.2000)."
Alabama Dep't of Corr. v. Thompson, 855 So.2d 1016, 1020 (Ala.2003).
Quinlan stated in his affidavits that on December 2, 2002, Jones threatened him with physical violence and threatened to kill him. He also stated that on December 30, 2002, Jones hit him in the face and squeezed his testicles with such force that he "screamed out in pain and lapsed into a state of semi-consciousness," that Jones removed several items of personal property from his possession, and that Jones destroyed certain items of that personal property. Jones, in his affidavit, "categorically den[ied]" Quinlan's allegations regarding the incidents that occurred on December 2, 2002, and December 30, 2002. The incident report relating to the December 30, 2002, incident revealed that Quinlan's personal property, which consisted of legal papers belonging to Quinlan and to other inmates, was confiscated, but it did not indicate that Quinlan was physically restrained or that Jones used any force to subdue, detain, or otherwise control Quinlan. The disciplinary report regarding the December 30, 2002, incident indicates only that Quinlan was found guilty of being in an unauthorized area.
Viewed in the light most favorable to Quinlan, as required by our standard of review in an appeal from a summary judgment, see Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990), Quinlan's evidence tends to establish that on December 2, 2002, Jones threatened Quinlan with physical violence and that on December 30, 2002, Jones hit Quinlan in the face, squeezed his testicles, took his personal property, and destroyed some of it in Quinlan's presence. Although the use of force by correctional officers is necessary and appropriate in some cases and although the decision to use force to subdue an inmate would certainly be subject to state-agent immunity under Ex parte Cranman, Jones's squeezing Quinlan's testicles could be determined to have been willful, malicious, or beyond Jones's authority. See, generally, Wright v. Wynn, 682 So.2d 1, 2 (Ala.1996) (holding that the predecessor to state-agent immunity, discretionary-function immunity, did not preclude an assault-and-battery claim against a state trooper because a fact question existed concerning whether the trooper had used excessive force in effectuating an arrest). Likewise, Jones's threat to physically harm Quinlan on December 2, 2002, in light of the November 25, 2002, altercation between the two, could be found to have constituted an assault and could also be determined to have been willful, malicious, or beyond Jones's authority. Similarly, Jones's destruction of Quinlan's personal property, if it did occur, could be *914 determined to have been willful, malicious, or beyond Jones's authority. Whether Jones's threats and use of force against Quinlan in striking him in the face and squeezing his testicles were willful, malicious, or beyond Jones's authority, and indeed the question whether any force was used or threatened at all, are questions of fact; thus, Jones was not entitled to a summary judgment on Quinlan's claim stemming from the alleged events of December 2, 2002, and December 30, 2002. The trial court's entry of a summary judgment in Jones's favor on Quinlan's assault-and-battery claims and his deprivation-of-property claim stemming from the alleged events of December 2, 2002, and December 30, 2002, were inappropriate, and, therefore, I would reverse the summary judgment in its entirety.
MURDOCK, Judge, concurring in the result in part and dissenting in part.
The main opinion affirms the summary judgment in favor of Jones with respect to the alleged events of December 2, 2002, and December 30, 2002. In accord with my vote in Harris v. Lombardi, 897 So.2d 1136 (Ala.Civ.App.2004), I dissent from this affirmance. This court, in Harris and again today, has misconstrued Rule 56, Ala. R. Civ. P., and has misread our Supreme Court's holding in Lee L. Saad Construction Co. v. DPF Architects, P.C., 851 So.2d 507 (Ala.2002).
Rule 56(c)(3), Ala. R. Civ. P., states that a summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Lee L. Saad Construction Co., the plaintiff had failed to meet the defendants' evidentiary showing with evidence of its own in support of its allegations. It was in reference to this omission that our Supreme Court explained:
"Saad Construction presented no evidence creating a genuine issue of material fact concerning its claims against Capes or Capes Engineering. `In opposing a motion for summary judgment, the nonmovants cannot merely rely on the allegations in their complaint.'"
Lee L. Saad Constr. Co., 851 So.2d at 523 (quoting Rhodes v. General Motors Corp., 621 So.2d 945, 949 (Ala.1993)). The Supreme Court did not say that a litigant cannot rely on the same facts that are alleged in the pleadings; it said only that a litigant cannot rely on the mere allegations of those facts in a pleading but instead must introduce evidence (e.g., in the form of an affidavit) of those facts in order to create a genuine issue with respect to them. See Harris v. Lombardi, 897 So.2d at 1139 (Crawley, J., dissenting, joined by Murdock, J.).
In light of the foregoing, I concur only in the result reached by the main opinion in reversing the summary judgment in favor of Jones with respect to the alleged events of November 25, 2002.
As to the issue of the attorney general's representation of Jones, I concur in the result reached by the main opinion.
NOTES
[1] "`"Assault" has been defined as "an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." Western Union Tel. Co. v. Hill, 25 Ala.App. 540, 542, 150 So. 709, 710 (1933).... In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Cmty. Hosp., 719 So.2d 1190 (Ala.1998).... Our supreme court has explained that "`[a] battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.'" Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala.1986) (quoting Singer Mach. Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) ...).' "Wood v. Cowart Enters., Inc., 809 So.2d 835, 837 (Ala.Civ.App.2001) (emphasis omitted)."

Harris v. Lombardi, 897 So.2d 1136, 1137-38 (Ala.Civ.App.2004).
[2] Section 6-5-260 provides: "The owner of personalty is entitled to possession thereof. Any unlawful deprivation of or interference with such possession is a tort for which an action lies."
[3] We note that Quinlan never alleged that he was suing Jones in his official capacity. Although the record appears clear to us that Quinlan did not sue Jones in his official capacity, we note that if he had, Jones would be entitled to absolute immunity under Article I, § 14, Alabama Constitution of 1901, which prohibits the State of Alabama from being made a party to any lawsuit and prohibits any lawsuit against a State agent that is in effect a suit against the State.
[4] Three of the affidavits from other inmates were notarized, and one was not notarized. Although an affidavit must be notarized to satisfy the requirements of Rule 56(e), Ala. R. Civ. P., see Couch v. City of Sheffield, 708 So.2d 144, 152-53 (Ala.1998), Jones did not object to the trial court's consideration of all of the affidavits.
[5] We recognize that discretionary-function immunity, which Jones pleaded in his answer, is, in essence, the same type of immunity as state-agent immunity, on which Jones based his motion for a summary judgment. In Ex parte Cranman, 792 So.2d 392 (Ala.2000) (a plurality opinion that was adopted by a majority of the supreme court in Ex parte Butts, 775 So.2d 173 (Ala.2000)), our supreme court restated the rule governing state-agent immunity; the full text of the Cranman restatement for state-agent immunity is set out later in this opinion. We deem Ex parte Cranman applicable here and will analyze Jones's immunity under the principles set forth in the Cranman restatement for state-agent immunity. See, e.g., Howard v. City of Atmore, as modified on denial of rehearing, 887 So.2d 201 (Ala.2003).
[6] The full text of § 36-12-1 is set out later in this opinion.
[7] In arguing these contentions on appeal, Quinlan claims that Jones's actions violated a number of state and federal laws and constitutional provisions. However, Quinlan did not make those claims before the trial court; accordingly, those claims are not before this court. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
[8] "`"Wilfulness" is [defined as] the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.' Instruction 29.01, Alabama Pattern Jury Instructions-Civil (2d ed. 1993); see also Roe v. Lewis, 416 So.2d 750, 754 (Ala.1982) (willfulness `denotes an intention to cause an injury'). Similarly, malice is defined as `[t]he intent, without justification or excuse, to commit a wrongful act....' Black's Law Dictionary, 968 (7th ed. 1999)."

Ex parte Nall, 879 So.2d 541, 546 (Ala.2003).
[9] It is important to note that the plaintiff in this case and in Harris v. Lombardi, 897 So.2d 1136 (Ala.Civ.App.2004), a case cited in the main opinion were pro se litigants. A pro se litigant who is unfamiliar with the concept of notice pleading is more likely to allege more facts than is required under the Alabama Rules of Civil Procedure. This may place a litigant in the peculiar position of having to reallege, in affidavit form, the facts asserted in the complaint if those facts would properly rebut a motion for a summary judgment. It is not the intent of Rule 56(e), Ala. R. Civ. P., to summarily dismiss a claim simply because a nonmovant has gone beyond the requirements of notice pleading.
[10] This is a statement of the requirement for the usual complaint. It is noted that in some instances, such as when a plaintiff asserts an allegation of fraud, the plaintiff is required to plead with particularity the facts and circumstances concerning the alleged fraud.