Vallarie Stevenson sued her employer, Pemco Aeroplex, Inc. ("Pemco"); one of Pemco's supervisors, Rick Windsor; and Pemco's parent corporation, Precision Standard, Inc. ("Precision"), alleging battery, the tort of outrage, and invasion of privacy. All of Stevenson's claims arose out of alleged conduct by Windsor that Stevenson viewed as sexual harassment.[1]
After the trial court entered a summary judgment in favor of Precision, the case proceeded to trial against Pemco and Windsor. The evidence presented at trial was based upon Stevenson's allegations of sexual harassment, retaliation against her for her having complained about the alleged sexual harassment, and failure to supervise. Immediately before the trial court charged the jury, Stevenson dismissed her claim alleging the tort of outrage, as to both defendants.[2] The trial court charged the jury on the law of agency, assault and battery, invasion of privacy, negligence, and wantonness.[3]
The jury returned a verdict against Pemco, awarding Stevenson $1 million in *Page 822 
compensatory damages and $3 million in punitive damages. However, the jury found in favor of Windsor. The trial court entered a judgment based on the verdicts. Pemco moved for a judgment as a matter of law ("JML") or, in the alternative, for a new trial or a remittitur. The court initially granted Pemco's motion for a new trial, based on the inconsistency of the verdicts. Upon a "motion to reconsider" filed by Stevenson, however, it reinstated the verdicts and granted Pemco's motion for a new trial, conditioned on Stevenson's refusal to accept a remittitur of the entire punitive-damages award; Stevenson accepted the remittitur. Pemco then filed a "motion to reconsider," which the trial court denied.[4]
Pemco appeals from the denial of its posttrial motions (no. 1971194). Stevenson appeals from the order of remittitur (no. 1971222) and from the summary judgment in favor of Precision (no. 1970642). Stevenson does not appeal from the judgment in favor of Windsor.
The facts of this case are sharply disputed. Stevenson began working for Pemco in 1982. She testified that from early 1992 until November 1993 she worked under the supervision of Rick Windsor, who she claims sexually harassed her. She stated that Windsor made the following sexual overtures: on several occasions he invited her out for drinks; on one occasion, he invited her to the lake to go out on his boat; and on one occasion, he made a statement to her to the effect that there was a "tiger in that safari outfit" she was wearing.
Stevenson testified that after refusing Windsor's overtures she noticed that her job duties increased and that she was continuously harassed about her job performance. Stevenson further testified that she did not report any of the aforementioned overtures to Pemco's management, but that she did have her union steward or stewards file two separate grievances for her, one relating to Windsor's initial failure to respond to her initial request for a union steward, and the second relating to sexual harassment. Our review of those grievances as filed, however, reveals that they contain no allegations of sexual harassment. On cross-examination, Stevenson admitted that employees of Pemco often met at a "known watering hole" for drinks and that on several occasions she had stopped by that "watering hole" for purposes other than "getting drunk." Stevenson also admitted on cross-examination that it was another co-employee, Greg Gann, and not Windsor, who had initially brought up the subject of going to the lake.
Stevenson testified that the alleged sexual harassment culminated on October 7, 1993, when, she said, Windsor called her into an office, exposed himself, and asked her for oral sex. Windsor denied the allegation. Stevenson testified that on October 27, 1993, she reported the incident to Charles E. Perry, Pemco's president, who, she said, promptly ordered that she be transferred to another department. Stevenson testified that after she was transferred, the harassment stopped:
 "Q. So it was three weeks from the time that Mr. Windsor allegedly exposed himself to the time you actually told anybody at the company; is that right?
"A. That's right.
 "Q. And at that time you knew that the company had a policy against sexual harassment, didn't you?
"A. Yes, ma'am, I did.
 "Q. Because you had filed a grievance about it three or four years before; isn't that true? About your supervisor then, Mr. Ward?
"A. Yes.
 "Q. And when you talked to Mr. Perry, he told you that he would take care *Page 823 
of it and that he would transfer you immediately so you did not have to report to Mr. Windsor; isn't that right?
"A. That's right.
"Q. And that's exactly what he did, isn't that true?
"A. That's true.
"Q. And you never had to report to Mr. Windsor again?
"A. No, ma'am, I didn't.
 "Q. And Mr. Windsor hasn't done anything to you that you believe to be sexually harassing since that time; isn't that true?
"A. That's true.
". . . .
 "Q. Okay. When you talked to Mr. Perry — Let's back up and talk about Mr. Perry again. He told you that he was going to move you and that he would take care of it. And you asked him to be discreet about that?
"A. Yes, I did.
". . . .
 "Q. And he moved you away from Mr. Windsor, who hasn't bothered you since?
"A. That's right."
The evidence indicates that although Stevenson was transferred, Pemco took no steps to investigate her complaint of sexual harassment. Stevenson testified that after she reported the sexual-harassment incident and sustained an on-the-job injury, she was subjected to at least seven "random" drug tests within a four-month period. Stevenson testified that she never tested "positive" on the tests, but that Pemco nonetheless "forced" her to undergo treatment and rehabilitation, and she says Pemco did this in retaliation for her having reported the sexual-harassment incident. Specifically, Stevenson stated that in November 1993 she received a letter from John Vines, Pemco's human-resources director, recommending that she agree to undergo treatment. Stevenson said she expressed to Vines a concern that she was being retaliated against for having reported the sexual-harassment incident. However, a letter in the record, from Dr. Howard M. Strickler, dated December 2, 1993, confirms that Stevenson had been evaluated, concludes that she had a chemical dependency, and recommends that she undergo treatment. Stevenson admitted at trial that she had had a problem with prescription pain medication that she said had been prescribed for her after the on-the-job injury she had suffered at Pemco.
Dr. Rosemary Rosenzweig, a clinical psychologist called by Stevenson, testified extensively concerning Pemco's policies and procedures on sexual harassment and the manner in which Pemco implemented them. Dr. Rosenzweig testified that Pemco's policies and procedures were ineffective in several respects because, she said, they failed to clearly define "sexual harassment," failed to provide examples of sexual harassment, failed to give clearly defined procedures regarding sexual harassment, and made no assurances that there would be an investigation following a complaint of sexual harassment. Dr. Rosenzweig further testified that Pemco's training on sexual harassment was inadequate because, she said, it was conducted only once in 1991 or 1992, it was not mandatory, and it was attended only by supervisors.
Dr. Rosenzweig stated that because Pemco had taken no action to investigate Stevenson's complaint, there could be no disciplinary action to remedy the harm Stevenson had suffered. Dr. Rosenzweig also testified regarding the manner in which other sexual-harassment complaints at Pemco were handled. Dr. Rosenzweig stated that, in her opinion, the effects of retaliation against an employee for reporting sexual harassment may be worse than the original act or acts of harassment.
As previously noted, the jury returned a verdict against Pemco but exonerated Windsor from any liability. It is undisputed that most of the evidence presented at trial related to the claim alleging the tort of outrage. Pemco contends that Stevenson's *Page 824 
dismissal of her outrage claim compelled the dismissal of all independent claims — i.e., claims not based on the theory of respondeat superior — asserted against it. Accordingly, Pemco contends that the verdict is inconsistent and is due to be set aside. Stevenson, on the other hand, points out that a verdict for an employee and against an employer is inconsistent only when the employer's liability is based solely on the theory of respondeat superior. Specifically, she argues that she asserted independent claims against Pemco alleging negligence and/or wantonness and invasion of privacy.
The dispositive issue on appeal is whether the evidence, under theories of negligence and/or wantonness and invasion of privacy, can support a judgment against Pemco while simultaneously absolving Windsor of any wrongdoing.
 I.
Stevenson argues that the verdict could be based on evidence she says indicated Pemco acted negligently or wantonly in supervising and training its employees. Stevenson correctly points out that in Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala. 1993), this Court recognized a cause of action for negligent or wanton supervision and training. That cause of action, however, was predicated on the underlying tortious conduct of an employee, an assistant manager who at trial admitted wrongdoing. In Big B, the assistant manager forced a customer to engage in a sex act with him, after he detained the customer and accused her of shoplifting. A suspected shoplifter who was an acquaintance of the customer and who had entered the store with her had escaped from the store. The assistant manager took the customer to a back room, accused her of participating in the theft, demanded the name of her acquaintance, and threatened to file criminal charges against her unless she engaged in a sexual act with him. The customer sued, seeking to recover damages from the assistant manager and from Big B. Her claims alleged assault and battery and false imprisonment against the assistant manager and against Big B based on the doctrine of respondeat superior, and also alleged negligent or wanton training and supervision against Big B. This Court, affirming a judgment against Big B,[5] held that a jury question existed as to whether Big B had negligently supervised and/or trained its assistant manager, by (1) failing to investigate properly an earlier accusation of sexual harassment against the assistant manager and (2) failing to review the store's training manuals with the assistant manager or to otherwise train him as to the proper manner in which he was to detain and question suspected shoplifters.
In Potts v. BE K Construction Co., 604 So.2d 398 (Ala. 1992), this Court stated that an employer is liable for the intentional torts of its agent (1) if the wrongful acts were committed in the line and scope of the agent's employment; or (2) if the acts were taken in furtherance of the business of the employer; or (3) if the employer participated in, authorized, or ratified the wrongful acts. In order to show that the employer either implicitly "ratified" or "tolerated" sexual harassment by one of its employees, this Court stated that, in addition toproving the underlying tortious conduct of an offending employee, a complaining employee must show that his or her employer
 "(1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take `adequate' steps to remedy the situation."
Id. at 400.
Under this Court's holdings in Big B and Potts, the only means of attaching *Page 825 
liability to Pemco would be to prove wrongful conduct by Windsor as its agent. But, Pemco simply cannot be held liable for authorizing or ratifying conduct that, according to the jury, did not occur. Accordingly, a verdict against Pemco based on a finding of negligent training and supervision would be inconsistent with a verdict exonerating Windsor.
 II.
Stevenson also relies on B Big for the proposition that the verdict against Pemco could be based on negligence or wantonness on the part of Pemco in failing to investigate her complaint of sexual harassment.[6] As previously noted, in Big B — in a setting where the employee assistant manager admitted wrongdoing — this Court held that a jury question existed as to whether Big B had negligently supervised and/or trained its assistant manager. Hence, the manner in which a sexual-harassment complaint is handled when sexual harassment has, in fact, occurred could form the basis for a claim for negligent or wanton supervision. See, also, Mardis v. Robbins Tire Rubber Co., 669 So.2d 885 (Ala. 1995) (holding, in a setting where allegations of the employee's misconduct are taken as true, for purposes of the employer's motion for summary judgment, a genuine issue of material fact existed regarding whether the employer had failed to take adequate corrective action in investigating a complaint of sexual harassment, and that issue of fact precluded a summary judgment on the employee's claims alleging negligent supervision and training). The prerequisite that the plaintiff prove misconduct on the part of an employee is supported by the rule that evidence of the manner in which an employer handled a complaint can provide an affirmative defense to the employee's claim, rather than a separate cause of action accruing independently of the occurrence of an underlying event. See Faragher v. City of Boca Raton,524 U.S. 775 (1997) (holding that an employer's conduct in preventing and correcting sexually harassing behavior is an affirmative defense to liability).
We decline to extend our holdings to recognize a cause of action based on an employer's negligence or wantonness in investigating a claim, independent of proof of wrongful conduct of an employee. In Sumner v. Goodyear Tire Rubber Co., 427 Mich. 505,398 N.W.2d 368 (1986), the Michigan Supreme Court reached the same result, holding that a failure to investigate a sexual-harassment complaint is not independently actionable:
 "[T]his view [recognizing a claim independent of wrongful conduct of an employee] would allow a plaintiff to state a cause of action against an employer and indeed win damages even where there has been no harassment. We reject this view as unwieldy and incorrect. A failure to investigate is not independently actionable. It has in the past been used only as a formula for derivative liability against an employer whose agents or employees have engaged in sexual harassment."
427 Mich. at 545, 398 N.W.2d at 385-86.
A verdict against Pemco based on a finding of a negligent or wanton failure to investigate a complaint of sexual harassment, in a setting where Stevenson failed to prove sexual harassment, cannot stand.
 III.
We now turn to Stevenson's argument that she asserted an independent claim against Pemco for invasion of privacy. *Page 826 
Stevenson argues that Pemco, by subjecting her to multiple drug tests and forcing her to undergo treatment, wrongfully intruded into her private activities in such a manner "as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Specifically, she states that after she made her complaint of sexual harassment and sustained her on-the-job injury, Pemco subjected her to at least seven "random" drug tests and, despite the fact that she says she never tested positive to the tests, "forced" her to undergo treatment. Stevenson testified that while she was undergoing the drug treatment her grandfather died and she was not allowed to attend his funeral, and she claimed to have suffered mental anguish as a result of not being allowed to attend the funeral.
Stevenson correctly points out that in Phillips v. SmalleyMaintenance Services, Inc., 435 So.2d 705 (Ala. 1983), this Court recognized a cause of action for invasion of privacy stemming from sexual harassment. In Phillips, this Court held that extensive egregious inquiries into one's sex life, coupled with intrusive and coercive sexual demands, constituted a wrongful intrusion into one's private activities sufficient "to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Id. at 711. See, also, Ex parte Atmore CommunityHosp., 719 So.2d 1190 (Ala. 1998).
The question we must address is whether there was an offensive or objectionable prying or intrusion into Stevenson's private affairs or concerns that will provide a cause of action for invasion of privacy. We conclude that there was not. This Court has held:
 "`The "wrongful intrusion" prong of the tort of invasion of privacy has been defined as the "intentional interference with another's interest in solitude or seclusion, either as to his person or [as] to his private affairs or concerns." W. Prosser W. Keeton, The Law of Torts, p. 851 (5th ed. 1984). "[T]here must be something in the nature of prying or intrusion" and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." Id. at 855.'"
Busby v. Truswal Systems Corp., 551 So.2d 322, 323 (Ala. 1989) (quoting Hogin v. Cottingham, 533 So.2d 525, 531 (Ala. 1988)) (emphasis added).
The drug tests to which Stevenson was subjected were "random" tests. Stevenson testified that she was aware that Pemco was required by the Federal Aviation Administration to perform drug testing and she testified that she had no problem with the drug-testing program. Stevenson further testified that she had no objections to taking any of the drug tests:
 "Q. I'm just trying to get something straight here. Your complaint here says that the company gave you no less than seven drug tests during this four-month period. Are there any other drug tests that you have not told me about? We have got seven of them from August through December of'93. Is that it?
"A. Uh-huh.
"Q. Is that answering yes?
"A. Uh-huh.
 "Q. And you just testified that you did not have any problems with having to take those seven tests; is that correct?
"A. That is correct."
We note that while Stevenson alleges that Pemco "forced" her into a drug-rehabilitation program, she, nevertheless, admitted at trial that she had had a problem with prescription pain medication that had been prescribed for her because of the on-the-job injury she had suffered at Pemco. She further admitted that while she was working at Pemco two independent physicians, including Dr. Strickler, informed her that she had a problem with prescription medication. As noted previously, the record contains a letter from Dr. Strickler *Page 827 
recommending that Stevenson undergo "inpatient detoxification followed by outpatient treatment" for her chemical dependency.
Based on Stevenson's admitted testimony (1) that she had had no objections to the administration of any of the drug tests and (2) that she had had a problem with prescription pain medication, we find no substantial evidence of an actionable intrusion into her private affairs.
It is therefore clear that the evidence does not support a judgment against Pemco on any theory other than respondeat superior. "A jury verdict for an agent as defendant cannot be reconciled with a verdict against the agent's principal if the only claim against the principal is based on the underlying negligence of the agent." Owens v. Lucas, 604 So.2d 389, 391
(Ala. 1992).
 IV.
We must consider the question of the appropriate disposition of these appeals. Ordinarily, in a civil case involving two inconsistent jury verdicts — one on a direct claim and one on a derivative claim, or one on a direct claim and one on a claim based on vicarious liability — on a proper motion both must be set aside. Id. at 391. However, because Stevenson did not appeal from the judgment in favor of Windsor, that judgment has become final; therefore, the doctrine of res judicata bars a new trial on the issue of Windsor's liability. Because the judgment against Windsor must stand, a judgment must be entered in favor of Pemco.[7] See de Feliciano v. de Jesus, 873 F.2d 447 (1st Cir. 1989) (in light of an inconsistent verdict, corporate codefendant was held entitled to a judgment, where plaintiffs did not appeal from judgment in favor of codefendant president of corporation); see, also, United Steelworkers of AmericaAFL-CIO-CLC v. O'Neal, 437 So.2d 101, 103 (Ala. 1983) (on a claim directly against an agent, and against the principal solely on the theory of respondeat superior, "a verdict in favor of the agent works an automatic acquittal of the principal so that [the] verdict against [the principal] must be set aside"); and Perry v.Costa, 97 A.D.2d 655, 469 N.Y.S.2d 193 (1983) (doctrine of res judicata barred new trial on question of employer's liability, based on final judgment in favor of employee; judgment against employer reversed).
We pretermit discussion of all other issues raised by the parties on appeal. Because Pemco is entitled to a judgment in its favor, the summary judgment in favor of Precision must be affirmed, and Stevenson's appeal from the remittitur order is moot.
1970642 — AFFIRMED.
1971194 — REVERSED AND JUDGMENT RENDERED FOR PEMCO AEROPLEX, INC.
1971222 — DISMISSED AS MOOT.
Hooper, C.J., and Maddox, Houston, See, Brown, and Johnstone, JJ., concur.
[1] We note that in her complaint Stevenson named an additional defendant and stated additional claims. The additional defendant and those additional claims, however, are not before the Court on these appeals.
[2] Stevenson's outrage claim, as structured in her complaint, was based on allegations that the corporate defendants (1) condoned and/or ratified acts of sexual misconduct directed against female employees, (2) failed to take appropriate remedial action regarding sexual harassment in the workplace, (3) failed to properly train, supervise, and discipline employees concerning sexual harassment, (4) subjected her to no fewer than seven drug tests during a four-month period after she reported the alleged sexual harassment and sustained an on-the-job back injury, and (5) failed to comply with company regulations regarding the administration of drug tests.
[3] Evidence concerning issues not raised in the complaint was admitted at trial without objection. See Rule 15(b), Ala.R.Civ.P. In addition to charging the jury on the issues Stevenson raised in her complaint, the trial court also charged the jury on the additional issues tried by consent, again without objection.
[4] The Alabama Rules of Civil Procedure do not provide for a "motion to reconsider." Both of the motions so styled in this case were treated as Rule 59(e) motions to alter, amend, or vacate the judgments.
[5] At trial, the customer dismissed the assistant manager as a defendant.
[6] It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. See Potts, supra; Big B, supra; Mardis v. Robbins Tire Rubber Co.,669 So.2d 885 (Ala. 1995); and Ex parte Atmore Community Hosp.,719 So.2d 1190 (Ala. 1998).
[7] Rule 50(d), Ala.R.Civ.P., allows the appellee to seek a new trial on a particular issue for the first time on appeal when the appellant successfully challenges the trial court's failure to enter a judgment as a matter of law (JML) as to that issue. Here, we do not have before us any issue regarding the judgment in favor of Windsor, and, therefore, Rule 50(d) does not come into play so as to allow Stevenson a new trial as to Windsor. Compare StateFarm Fire Cas. Co. v. Slade, 747 So.2d 293 (Ala. 1999), where the inconsistent verdicts were against the same defendant. *Page 828