Michael STANCOMBE, Plaintiff–
Appellant,

v.

NEW PROCESS STEEL LP, New Process Steel LP LLC, New Process Steel Corporation of Illinois, Roderick Woodfin, Defendants–Appellees.

No. 15–11791
Non–Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 06/02/2016

Stephen Andrew Strickland, Stephen Strickland Law, Birmingham, AL, for Plaintiff–Appellant.

John W. Sheffield, John W. Sheffield, Esquire, Birmingham, AL, for Defendants–Appellees.

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Michael Stancombe appeals the district court's grant of summary judgment in favor of Defendants–Appellees New Process Steel, L.P., New Process Steel LP LLC, and New Process Steel Corporation of Illinois (collectively "NPS"), and Roderick Woodfin ("Woodfin"), in a lawsuit asserting federal employment-discrimination claims of hostile work environment and constructive discharge,

pursuant to Title VII, 42 U.S.C. § 2000e–2, and state-law claims of invasion of privacy, outrage, assault and battery, and negligent and wanton supervision. After careful review, we affirm.

## I. Factual Background

NPS is a steel-processing company with a facility in Fairfield, Alabama.[1] In or around January 2012, Stancombe got a temporary position at NPS through a staffing agency. He worked on the "banding line," where he banded steel coil products together so that they would not unravel. Stancombe had been working at NPS for roughly one month when he resigned following two incidents of alleged on-the-job sexual harassment by a male coworker, Woodfin.

The first incident occurred on Thursday, February 9, 2012. Woodfin hugged Stancombe and touched his buttocks three times in a row while stating, "Good job, good job." Stancombe reported the incident to his supervisor, Joe Young, who, in turn, informed the manager of the production department, Doug Logan. Stancombe met with Logan, who reassured Stancombe that NPS took sexual harassment seriously and that NPS would investigate the complaint. Logan took written statements from Stancombe and Woodfin, moved Stancombe to a different department, and instructed Woodfin not to have any contact with Stancombe. Logan also told Stancombe that he would be assigned to a different shift than Woodfin starting the following Monday, February 13, 2012.

In the meantime, Stancombe volunteered to work overtime on Saturday, February 11, two days after the first incident. When he appeared for work, he saw that Woodfin also was working that day. Stancombe told his supervisor, Joel Bowman,

that he was not comfortable around Woodfin, and Bowman arranged for Stancombe to work with Bowman for the day. At some point, Stancombe was alone and kneeling down when Woodfin came over to Stancombe's area, grabbed his head, and made three pelvic thrusts in his face. The incident lasted for three to four seconds. Disgusted and in shock, Stancombe angrily picked up his tools, clocked out, and left. That was his last day of work at NPS. Stancombe did not inform NPS of the incident or his resignation directly, but rather told the staffing agency, which contacted NPS on February 13.

Both of Stancombe's allegations were investigated by NPS. After the first complaint, Logan conducted a preliminary investigation and interviewed Stancombe, Woodfin, and five other employees who had been working in the general area of the incident. Logan did not find any validation of Stancombe's complaint that Woodfin touched his buttocks. When the human-resources administrator, Renee Richardson, returned from vacation on February 13, she interviewed Woodfin and eight other employees about both of Stancombe's complaints. Richardson agreed with Logan's determination regarding the first complaint and found no validation for Stancombe's second complaint. Woodfin denied the second incident, no employee witnessed it, and Bowman stated that he was near Stancombe the entire day but did not see the alleged incident.

Following the investigations, Woodfin was suspended for three days for the first incident because he had admitted to putting his arm around Stancombe. While NPS found that the physical contact was instigated by Stancombe and did not qualify as "harassment," NPS nonetheless sus-

---

1. We state the facts in the light most favorable to Stancombe, the non-moving party. *Bradley* *v. Franklin Collection Serv., Inc.,* 739 F.3d 606, 608 (11th Cir. 2014).

pended Woodfin as a "reminder ... that physical contact of this nature is inappropriate for the workplace." Apparently, what Woodfin was being reminded of was a prior disciplinary incident from June 2007, when NPS disciplined him for hitting another employee on the buttocks as the employee was bent over to look into a refrigerator. The conduct report for that incident states, "[A]ny further instance of confirmed inappropriate behavior will bring immediate termination."

NPS has a sexual discrimination and harassment policy in place. The policy explains the types of conduct that qualify as sexual harassment, and it directs employees to report instances of sexual harassment to management immediately. The policy also states that all reports of possible sexual harassment will be investigated and that a determination will be made on a case-by-case basis after taking into account all of the circumstances.

## II. Procedural History

Stancombe filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Based on Stancombe's allegations, the EEOC issued a determination finding cause to believe that Stancombe and other male employees at NPS had been subjected to sexual harassment in violation of Title VII. The EEOC also concluded that Stancombe was "constructively discharged."

After receiving his right-to-sue letter from the EEOC, Stancombe filed suit against NPS and Woodfin in the United States District Court for the Northern District of Alabama, alleging various claims under Title VII and Alabama state law. The district court granted summary judgment to the defendants on all claims except for a state-law assault-and-battery claim against Woodfin, which it declined to exercise supplemental jurisdiction over and dismissed without prejudice. Stancombe timely appealed.

## III. Standard of Review

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists if a jury could return a verdict for the non-moving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## IV. Title VII Claims [2]

### A. Hostile Work Environment

Stancombe argues that NPS was not entitled to summary judgment on his hostile-work-environment claim because the

2. For both Title VII claims, Stancombe relies on the EEOC determination finding cause to believe that Title VII had been violated as he alleged. Although an EEOC determination may be admissible at trial, it is not an adjudication of rights and liabilities, *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1289 (11th Cir. 2008), and such determinations may "vary greatly in quality and factual detail," *Barfield v. Orange Cnty.*, 911 F.2d 644, 650 (11th Cir. 1990). Moreover, both this Court and the district court have a duty to review *de novo* whether a genuine issue of material fact exists for trial. *Moore v. Devine*, 767 F.2d 1541, 1550–51 (11th Cir. 1985) *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir. 1986) (clarifying that EEOC determinations for federal employees are different and may be binding on the courts). With these principles in mind, we find that the EEOC determination in this case, consisting largely of legal conclusions without supporting analysis, is of little probative value and does not affect our analysis.

incidents were sufficiently continuous and concerted to have altered the conditions of his employment. He further argues that NPS failed to take action to stop the sexually inappropriate behavior.

Title VII is violated when an employee's "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted). "As opposed to discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, a hostile work environment claim addresses acts different in kind whose very nature involves repeated conduct, such as discriminatory intimidation, ridicule, and insult." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotation marks omitted; alteration adopted).

To prove a hostile-work-environment claim, a plaintiff must establish the following elements: (1) he belongs to a protected group; (2) he has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on the protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis exists for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (*en banc*). The first two elements are not in dispute. We therefore focus on the remaining three.

1. Based on Sex

Same-sex harassment is actionable provided that the harassment was based on the sex of the employee. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79, 118 S.Ct. 998, 1001–02, 140 L.Ed.2d 201 (1998) ("[N]othing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant ... are of the same sex."). "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Reeves*, 594 F.3d at 813 (quotation marks omitted). To make that showing, the plaintiff may present evidence that (1) the harasser was homosexual; (2) that the harasser has a gender-hostility towards that particular sex in the workplace; or (3) the harasser treated one sex in a mixed-sex workplace differently than the other sex. *See Oncale*, 523 U.S. at 80–81, 118 S.Ct. at 1002.

■ Here, Stancombe did not produce evidence that any harassment that occurred was based on his sex.[3] The record lacks comparative evidence or evidence that Woodfin had a general hostility toward men in the workplace. *See id.* We also cannot conclude that Stancombe produced "credible evidence that the harasser was homosexual." *Id.* Stancombe's apparent belief that Woodfin was gay and workplace rumors to that effect do not qualify as "credible evidence." Woodfin testified that he had been married twice and was not gay, Stancombe admitted that he did not know the motivation for Woodfin's conduct, and no "explicit or implicit proposals of sexual activity" occurred from which we or a jury could draw the inference that

---

3. The district court did not address this element, but it was raised in NPS's motion for summary judgment, and we may affirm on any adequate ground supported by the record. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251–52 (11th Cir. 2013).

Woodfin's conduct was motivated by sexual desire. *See id.* The fact that the conduct was sexual in nature is not sufficient on its own to show that it was motivated by sexual desire, because "general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable." *Reeves*, 594 F.3d at 809.

Although Woodfin's alleged conduct was inappropriate and vulgar, there is insufficient evidence to show that it amounted to discrimination because of sex. *See Oncale*, 523 U.S. at 81, 118 S.Ct. at 1002.

### 2. Sufficiently Hostile or Abusive

Not all workplace harassment, even if it based on sex, violates Title VII. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) *(en banc)*. Harassment is actionable only if "the conduct is sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 1245–46 (internal quotation marks omitted); *Oncale*, 523 U.S. at 81, 118 S.Ct. at 1003 (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment."). Therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998).

The "severe or pervasive" requirement contains both an objective and a subjective component. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). The offensive behavior "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* (internal quotation marks omitted).

The objective component is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale*, 523 U.S. at 81, 118 S.Ct. at 1003. Factors we consider in this analysis include (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Reeves*, 594 F.3d at 808–09. No single factor is required. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. The evidence of harassment is considered cumulatively and in the totality of the circumstances. *Reeves*, 594 F.3d at 808.

The Supreme Court has directed courts to carefully consider "the social context in which particular behavior occurs and is experienced by its target," which includes the "surrounding circumstances, expectations, and relationships," and not to simply focus on "the words used or the physical acts performed." *Oncale*, 523 U.S. at 81–82, 118 S.Ct. at 1003. "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 82, 118 S.Ct. at 1003.

Here, Stancombe's hostile-work-environment claim was based on two incidents of inappropriate physical contact by a coworker over roughly a one-month period: (1) Woodfin hugged Stancombe and touched his buttocks three times in succession; and (2) two days later, Woodfin approached Stancombe, who was alone and kneeling, grabbed his head, and made three pelvic thrusts in his face. The district court concluded that Stancombe was unable to show that the conduct was severe

or pervasive enough to create a hostile environment. We agree, although for reasons slightly different than those articulated by the district court.

With regard to the severity of the conduct and whether it was physically threatening or humiliating, Woodfin's alleged conduct is similar to conduct found to be severe and physically threatening and humiliating in *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, in which the harasser's conduct included "standing so close to [the plaintiff] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts." 234 F.3d 501, 509 (11th Cir. 2000). But we cannot look solely to the "physical acts performed," *Oncale*, 523 U.S. at 82, 118 S.Ct. at 1003, and the similarity to *Johnson* ends once we broaden our focus to view the totality of the circumstances.[4]

Significantly, in contrast to the facts of *Johnson*, the facts of this case do not show a "continuous barrage of sexual harassment," or, indeed, any harassing conduct other than the two incidents. *Id.* (quoting *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999)). The conduct in *Johnson* included roughly fifteen separate instances of harassment over the course of four months, including verbal harassment, which is not present in this case. *Id.* Likewise, in other cases where we have found evidence of a hostile working environment in relatively short-

time periods, the challenged conduct has been far more frequent than in this case, which involved two incidents over a one-month period. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (harassment occurred eighteen times over two-and-a-half weeks); *Miller*, 277 F.3d at 1276 (plaintiff was called racially offensive names three to four times per day over a one-month period). Here, the conduct was infrequent and isolated.[5]

Scant evidence also supports the conclusion that Woodfin's conduct interfered with Stancombe's job performance, despite the fact that Stancombe quit immediately after the second incident. In general, infrequent incidents are less likely to alter the conditions of employment. *See Mendoza*, 195 F.3d at 1249. While the second incident prompted Stancombe to leave work, and therefore arguably interfered with his job performance, the evidence reflects that, had Stancombe returned to work the following Monday, he would have been working a different shift than Woodfin. In other words, had Stancombe continued to work at NPS, Woodfin would no longer have been part of his immediate work "environment." The evidence also reflects that Woodfin was not a supervisor and that his conduct was anomalous and unwelcome in the workplace.

Under the totality of the circumstances, we are unable to conclude that Woodfin's conduct was "so objectively offensive as to alter the 'conditions' of the victim's em-

---

**4.** Stancombe has not identified any similar or dissimilar case from this Circuit, or any other circuit for that matter, that would shed light on whether the facts of this case are sufficiently severe or pervasive to alter the conditions of his employment.

**5.** Stancombe cites previous incidents of alleged harassment during Woodfin's history of employment at NPS, but it does not appear that Stancombe had any specific knowledge of these incidents at the time of the alleged

harassment. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) ("Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew."). Stancombe may have received some vague information from coworkers after the first incident, but it is not sufficient to create a genuine issue of material fact.

ployment." *Oncale*, 523 U.S. at 81, 118 S.Ct. at 1003. While the second incident arguably was severe and clearly was vulgar and wholly inappropriate, Stancombe demonstrated no pattern of harassment and presented no other supporting evidence of an abusive working environment, and the two isolated incidents were not so severe as to amount to a discriminatory change in terms and conditions of employment. *See Faragher*, 524 U.S. at 788, 118 S.Ct. at 2283.

### 3. Employer Liability

■ But even had Woodfin's conduct been sufficiently severe or pervasive to alter the terms and conditions of Stancombe's employment, we agree with the district court's alternative finding that no basis exists to hold NPS liable for Woodfin's conduct.

"Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller*, 277 F.3d at 1278. Thus, an employer will not be liable if it took "immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1261 (11th Cir. 2003). "The remedial action must be reasonably likely to prevent the misconduct from recurring." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996) (internal quotation marks omitted).

Here, NPS knew of the allegedly harassing conduct and took immediate and appropriate correction action. After speaking with Stancombe regarding the first incident, Logan and NPS immediately launched an investigation. *See Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1305 (11th Cir. 2007) ("A threshold step in correcting harassment is to determine if any occurred, and that requires an investi-

gation that is reasonable given the circumstances."). NPS interviewed Woodfin, Stancombe, and several other employees regarding the first incident. Woodfin denied the incident, and no other employee corroborated Stancombe's allegations. The fact that NPS did not find validation for Stancombe's allegations does not mean that its response was not "appropriate." *See Kilgore*, 93 F.3d at 754 (finding that the defendants' actions were sufficient to show "prompt remedial action" when they conducted investigatory interviews but found no support for the harassment allegations). NPS also asked Stancombe to speak with a human-resources representative and an attorney the Monday after the incident. And despite finding no validation, NPS still suspended Woodfin for inappropriate physical contact.

NPS also took immediate corrective action to separate Woodfin and Stancombe while the investigation proceeded. Logan interviewed Woodfin, warned Woodfin not to have any further contact with Stancombe, and moved Stancombe to a different shift so he would not be working around Woodfin. *See Fleming v. Boeing Co.*, 120 F.3d 242, 246–47 (11th Cir. 1997) (stating that the employer was not liable because it took immediate and appropriate corrective action by immediately investigating the complaint, giving a verbal warning, and transferring the complaining employee to a different group); *see also Baldwin*, 480 F.3d at 1305 ("[W]arnings and counseling of the harasser are enough where the allegations are substantiated."). Ultimately, these actions did not prevent the second incident from occurring, but we cannot say that NPS's actions were unreasonable or inappropriate under the circumstances.

To the extent that Stancombe argues that NPS failed to take appropriate action to prevent harassment from occurring, we

disagree. As a general matter, NPS took reasonable care to prevent harassment by promulgating an anti-harassment policy. *See Madray v. Publix Supermarkets, Inc.,* 208 F.3d 1290, 1297–98 (11th Cir. 2000) (discussing the *Faragher* affirmative defense regarding an employer's liability for a supervisor's conduct). Stancombe does not identify any defect with the policy itself.

Nor has Stancombe shown that NPS failed to respond appropriately to prior complaints against Woodfin. Stancombe relies heavily on an incident from 2004, but all three employees involved, including Woodfin, were disciplined, and they all affirmed that they did not feel that they had been harassed. With regard to the report from 2007, Woodfin was disciplined for touching another employee's buttocks. He was suspended and warned that another instance of confirmed inappropriate behavior would result in immediate termination. The only other incident known to NPS was from 2011, involving another employee who had complained to Logan that Woodfin made unwanted physical contact with his back and arm. Logan stated that he would handle it, and the employee stated that the incident never happened again. Stancombe cites one other incident from 2010 but provides no evidence that NPS knew about this event until the employee was interviewed following Stancombe's complaints. On the whole, Stancombe has not shown that NPS failed to respond appropriately in the past to the sporadic and relatively minor complaints against Woodfin.

In sum, the district court properly found that NPS was entitled to summary judgment because Stancombe failed to show that NPS was liable for Woodfin's conduct.

## B. Constructive Discharge

A plaintiff may bring a claim for "constructive discharge" in violation of Title VII when the employee's working conditions were "so intolerable that a reasonable person in [the employee's position] would have been compelled to resign." *Fitz v. Pugmire Lincoln–Mercury, Inc.,* 348 F.3d 974, 977 (11th Cir. 2003). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant v. Jones,* 575 F.3d 1281, 1298 (11th Cir. 2009).

An employer may defend against a claim of constructive discharge by showing both (1) that it had an accessible and effective policy for reporting and resolving complaints of discrimination; and (2) that the plaintiff unreasonably failed to avail himself of that remedial apparatus. *Id.* at 1299. "A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Kilgore,* 93 F.3d at 754.

The district court in this case did not err in granting summary judgment on the constructive-discharge claim. Because Stancombe did not show a hostile working environment, he likewise cannot meet the higher standard required to establish a constructive-discharge claim. *See Bryant,* 575 F.3d at 1298. In addition, NPS had a harassment policy in place that required conducting investigations of complaints filed by employees, and Stancombe failed to avail himself of that remedial apparatus when he resigned after the second incident without reporting it to management. *Id.* at 1299; *cf. Kilgore,* 93 F.3d at 754 (affirming summary judgment where the employer began an investigation of the plaintiffs' complaint but the plaintiffs did not return to work after advising the employer of their complaints). While Stancombe did report the first incident to management, two days was not sufficient time to investigate and remedy the situation. *See Kilgore,* 93 F.3d at 754.

We are not persuaded by Stancombe's claim that he was excused from using NPS's remedial apparatus after the second incident because NPS would have found no validation to his accusations, anyway. "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in original). Plus, when Stancombe resigned, NPS had already taken remedial action by changing Stancombe's shift to remove the allegedly intolerable working conditions.

In sum, the district court properly granted summary judgment on Stancombe's constructive-discharge claim.

## V. Alabama State Law Claims

### A. *Claims against Woodfin*

#### 1. Invasion of Privacy

Under Alabama law, the tort of "invasion of privacy" can be established by showing "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 651 (Ala. 1986); *see Machen v. Childersburg Bancorporation, Inc.*, 761 So.2d 981, 983 n. 1 (Ala. 1999) (noting that Alabama does not recognize an independent cause of action for "sexual harassment"). In other words, the plaintiff must show "an offensive or objectionable *prying or intrusion* into the plaintiffs' private affairs or concerns." *Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 323–24 (Ala. 1989) (emphasis added). "While asking a co-employee for a date and making sexual propositions usually do not constitute an invasion of privacy, extensive inquiries into one's sex life or looking up one's skirt may constitute an invasion of privacy." *Ex parte*

*Atmore Cmty. Hosp.*, 719 So.2d 1190, 1194 (Ala. 1998).

Here, Stancombe has not shown that the harassing conduct constituted an intrusion into his private affairs or concerns. Stancombe does not contend that Woodfin ever asked him about his sex life or private affairs, that Woodfin made any sexually related comments to him, or that Woodfin invaded his privacy in any way other than unwanted physical contact on two occasions. *Cf. Busby*, 551 So.2d at 324 (upholding liability for invasion of privacy where, over a three-month period, the defendant repeatedly questioned the plaintiff about her sex life, insisted that she engage in oral sex to avoid losing her job, and struck the plaintiff on the bottom after she refused to have oral sex with him); *Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190, 1194 (Ala. 1998) (upholding an invasion-of-privacy claim when the defendant repeatedly touched the plaintiff's arm in a manner that was unwelcome and with sexual overtones, "made several lewd comments[,] asked [the plaintiff] to meet him outside of work hours for other than business purposes[,] ... [and] looked up her skirt on more than one occasion"). Thus, there were no "improper inquiries into [his] personal sexual proclivities and personality" or any other examination or invasion of Stancombe's private concerns. *Phillips v. Smalley Maint. Servs.*, 435 So.2d 705, 707, 711 (Ala. 1983); *see also Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 826 (Ala. 1999).

We do not mean to suggest that unwanted physical contact alone could never constitute an invasion of privacy under Alabama law; we express no opinion on the matter. But the evidence of Woodfin's conduct in this case does not show an intrusion into Stancombe's private activities sufficient to support an invasion-of-privacy claim.

## 2. Outrage

Under Alabama law, the tort of outrage is an "extremely limited cause of action" that applies to only three kinds of conduct: (1) wrongful conduct regarding burial matters; (2) barbaric methods used to coerce an insurance settlement; and (3) egregious sexual harassment. *O'Rear v. B.H.*, 69 So.3d 106, 118 (Ala. 2011). The plaintiff must show that "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) that the distress was severe." *Hill v. Cundiff*, 797 F.3d 948, 983 (11th Cir. 2015) (quotation and citation omitted). The plaintiff's burden is a "heavy" one. *Surrency v. Harbison*, 489 So.2d 1097, 1105 (Ala. 1986). To be sufficiently extreme, the conduct must be "so outrageous as to be regarded as atrocious and utterly intolerable in a civilized society." *Kilgore*, 93 F.3d at 755 (quoting *Am. Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980)).

 Here, Woodfin's alleged conduct was not sufficiently egregious for the tort of outrage. *Id.* (noting that the tort of outrage only applies "in the most egregious circumstances"). No doubt the act of grabbing another's head and, while fully clothed, making pelvic thrusts in his face is boorish, vulgar, and completely unacceptable, but we cannot say that this one-time incident was so outrageous as to satisfy the requisite element of the tort of outrage. *See id.*; *cf. McIsaac*, 495 So.2d at 651–52 (holding that no extreme or outrageous conduct occurred where the defendant-supervisor stated that he wanted to have an affair with the plaintiff, attempted to kiss her, made suggestive remarks, touched her and put his arm around her, and then terminated her employment be-

cause she had refused his advances). Accordingly, the district court did not err in granting summary judgment on Stancombe's outrage claim.

### B. Claims Against NPS

#### 1. Negligent and Wanton Supervision

Stancombe argues that the district court erred in granting summary judgment to NPS on his negligent and wanton supervision claims, because Woodfin had a history of sexually harassing male co-workers and NPS failed to take appropriate remedial action.

In general, claims for wanton or negligent supervision under Alabama law both require a plaintiff to establish by affirmative proof that the employer knew or should have shown of the alleged incompetency. *Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So.3d 1196, 1216 (Ala. 2008) (negligent supervision); *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 683 (Ala. 2001) (wanton supervision). The employee's incompetency "must be habitual, rather than occasional, or of such a character as to render it imprudent to retain him in service." *First Nat'l Bank of Montgomery v. Chandler*, 144 Ala. 286, 39 So. 822, 828 (1905). A wanton-supervision claim requires a showing that the employer wantonly or reckless disregarded its agent's incompetence, whereas a negligent-supervision claim requires a showing that the employer failed to exercise "due care in the way that they handled the matter." *See Big B, Inc. v. Cottingham*, 634 So.2d 999, 1004 (Ala. 1993).

The Alabama Supreme Court has recognized that the manner in which sexual-harassment complaints are handled can form the basis for a claim of negligent or wanton supervision. *Stevenson*, 762 So.2d at 825. However, no cause of action arises "based on employer's negligence or wan-

tonness in investigating a claim, independent of proof of wrongful conduct of an employee." *Id.* An employer may defend a suit by showing that it handled the complaint in an appropriate manner. *Id.*

■ Here, the district court did not err in granting summary judgment on the negligent and wanton supervision claims, even assuming that underlying wrongful conduct happened. NPS took appropriate remedial action when informed of Stancombe's allegations against Woodfin regarding the first incident. Logan started an investigation; moved Stancombe to a different department; instructed Woodfin, who denied the incident, to stay away from Stancombe; arranged for Stancombe to change shifts the following week; and produced a report documenting the results of the investigation. NPS's actions were reasonable under the circumstances.

Indeed, Stancombe does not really challenge the adequacy of NPS's investigation into his own complaints but instead points to Woodfin's "history of inappropriate sexual behavior" and NPS's failure to take sufficient actions to stop the harassment. However, as we have previously explained, we are not persuaded that NPS failed to take appropriate remedial action in response to prior employee complaints of harassment, let alone that it wantonly disregarded such complaints. Woodfin's prior conduct was not so habitual or severe that it was imprudent for NPS to retain him and to take corrective action in the form of discipline and counseling. Accordingly, we affirm the district court's grant of summary judgment on these claims.

## 2. Vicarious Liability

Finally, Stancombe argues that NPS was vicariously liable for Woodfin's intentional torts because it knew or should have known of the improper conduct and failed to take adequate steps to stop it.

Under Alabama law, an employer is liable for the intentional torts of its agent (1) if the wrongful acts were committed in the scope of his employment; (2) the acts were in furtherance of the employer's interests; and (3) the employer participated in, authorized, or ratified the wrongful acts. *Potts v. BE & K Const. Co.*, 604 So.2d 398, 400 (Ala. 1992). Here, Stancombe contends that NPS ratified Woodfin's actions.

To establish that the employer "ratified" the tortious conduct of one employee against another employee, the complaining employee must show four things: (1) the underlying tortious conduct of the offending employee; (2) the employer's knowledge of the offending employee's tortious conduct against the complaining employee; (3) the employer's knowledge that the conduct constituted sexual harassment or a continuing tort, or both; and (4) the employer's failure to "take 'adequate' steps to remedy the situation." *Id.* If the steps taken by the employer are not "reasonably calculated to halt the harassment, the steps taken by the employer are not 'adequate.'" *Id.* at 401.

Here, NPS cannot be held liable for the underlying torts of outrage and invasion of privacy because, as discussed above, Stancombe failed to create a genuine issue of material fact as to these claims. The district court also did not err in finding that NPS was not vicariously liable for Woodfin's potential assault and battery.[6] While NPS knew of the inappropriate conduct, it did not ratify Woodfin's actions but rather responded to Stancombe's complaint by taking reasonable steps to ensure that Woodfin did not continue his inappropriate

---

**6.** As mentioned previously, the district court denied Woodfin summary judgment on the assault-and-battery claim and then dismissed it without prejudice.

behavior. *See id.* at 401. The steps taken to separate Woodfin and Stancombe distinguish this case from the facts of *Potts*, where the supervisor, after hearing of the victim's allegations of sexual harassment and counseling the harasser, allowed the harasser and the victim to continue to work together "without supervision," and the harassing conduct continued. *See id.* at 400.

## VI. Conclusion

For the reasons stated, we affirm in its entirety the judgment of the district court in favor of Defendants–Appellees NPS and Woodfin.

**AFFIRMED.**